## RUSSELL *vs.* BUTTERFIELD.

Where a *mortgage of personal property* given to secure the purchase money contains a clause that the property shall remain in the possession of the mortgagor until default in payment of the purchase money ; but on the happening of such default, or *in case the mortgagor attempt to remove or dispose of the property,* giving the mortgagee the right to take possession of and sell it ; the mortgagor is authorized upon the mortgagee *removing the property from the county* where the parties resided, to bring *replevin* to obtain possession thereof, although the time of payment of the mortgage moneys has not yet arrived.

The *continuance of possession* in the mortgagor in such case, does not *per se* render the mortgage *void,* provided it be duly filed. If *fraudulent in fact,* such fraud may be shown ; but it is not *constructively* fraudulent.

If the *mortgagor* could be deemed entitled *to recover as for the value of the property,* all he would be entitled to, would be the value of *his interest* in the property deducting the amount of the debt due to the mortgagee ; or if his interest had in fact *ceased* at the time of the assessment of the value, by the mortgage having become absolute, he would not be entitled to recover any thing except, perhaps, *costs ;* and *it seems,* that

Russell v. Butterfield.

in this case, the rights of the parties as they existed *at the commencement of the suit* are not regarded.

In *trover* or *trespass*, if the property be taken by a *stranger*, the *special property man* may recover the *whole value ;* holding the balance beyond his own interest in trust for the *general owner ;* but if the suit be against the latter, he is entitled to a deduction of the *value of his interest.*

ERROR from the Onondaga common pleas. Russell brought an action of *replevin* in the *detinet*, against the defendant *Jefferson Butterfield*, and on the trial the following facts appeared : on the 23d March, 1835, Russell sold a horse, waggon and harness to *George W. Butterfield,* for the sum of $90, and to secure the payment thereof, took a mortgage of the same property, with a defeazance therein expressed, that the same should be void on the payment of $50 on the first day of *November* next after the date of the mortgage, and the further sum of $40, in one year thereafter. The property to remain in the possession of the mortgagor, but in case of default of payment of the mortgage money or any part thereof, or *in case of any attempt to remove or dispose of the property* on the part of the mortgagor, the mortgagee to have a right to seize it, wherever it might be, and to sell and convert the same into money, and appropriate the proceeds to the payment of his debt, paying over the surplus, if any, to the mortgagor. The parties to the mortgage resided in the town of *Manlius*, in the clerk's office of which town the mortgage was filed on the 2d April, 1835. The mortgagor, who is a millwright, went to the town of *Fulton*, in the county of *Oswego*, to work and took the horse with him, where the horse was siezed under an *attachment*, sued out by one *Sumner Whitney*, upon which a judgment was obtained, an execution issued, the horse sold and bought in by Whitney, *subject to the plaintiff's mortgage*, at about *four dollars*, which, after deducting the charges of the keeping of the horse, yielded the plaintiff the *net* sum of *sixty-nine cents*. The horse was sold under the execution in July, 1835. In the month of *August* following, the plaintiff in this suit found him in the possession of *Jefferson Butterfield*, in the town of *Syracuse*, in the county of *Onondaga*,

and demanded that he be delivered to him. Jefferson But-
terfield refused to comply, saying he had the horse of *Sum-
ner Whitney*, and that Whitney was good to him for the
same. The plaintiff sued out a *replevin*, in *August*, 1835,
and the cause was tried in the Onondaga common pleas in
February, 1836. The court decided that the facts proved
did not show a forfeiture of the mortgage ; that the action
of the plaintiff was prematurely brought, and that the de-
fendant was entitled to a verdict for *the value of the horse ;*
and the jury, under the direction of the court, found a ver-
dict for the defendant, *finding the value* of the horse to be
thirty-five dollars, for which sum and costs, judgment was
rendered in favor of the defendant. The plaintiff having
excepted to the decision of the court, sued out a writ of
error.

*H. C. Van Schaack*, for plaintiff in error.

*J. G. Forbes & D. A. Orcutt*, for defendant in error.

*By the Court*, Cowen, J. The court clearly erred in de-
ciding that the removal of the horse to *Oswego*, did not vio-
late the provision in the mortgage. It was, in its own na-
ture, calculated to hazard the plaintiff's security, and worked
that effect. This was the very evil which the clause provid-
ing against a removal was intended to prevent.

It is now said the mortgage was fraudulent, by reason of
the continued possession of the mortgagor. This is not ne-
cessarily so. The plaintiff never parted with his property
absolutely. The sale and mortgage were one act, like say-
ing, " I sell, but the sale shall not be absolute, unless the
money be paid at such a time, and the goods be kept with-
in my reach." A mortgage of this sort would be void unless
filed, perhaps : but that now in question was filed. It might
also be shown to be in fact fraudulent, but is not construc-
tively so. The point of fraud was not even made below.
Every body concerned, unless the defendant below be an
exception, dealt with the horse as if he were bound to the
plaintiff below by a valid mortgage.

Russell v. Butterfield.

Again, admitting the action to have been premature, it seems to me that the measure of damages prescribed by the court below was wrong. A man claiming under, and who certainly has no greater right than the mortgagor, was allowed to recover the full value of the horse, without any deduction on account of the incumbrance. The mortgagor was probably insolvent, and all personal remedy against him was out of the question.

The statute gives the defendant in replevin the election, when he succeeds and has title, to take judgment for a specific return of the property, or, waiving that, for the value of the property to be assessed by a jury. 2. R. S. 437, § 55, 2d ed. But it could never have been intended to give the defendant a value beyond what the goods would be worth, when returned to his hands. The object was to substitute the real value for the specific goods. The relation of the defendant below to the plaintiff was in the nature of that between bailor and bailee. The case is certainly not stronger than if the mortgagee had done the wrong without process, and had been sued in trover or trespass. It has long been held that, although if the property be taken by a stranger, the whole value may be recovered by the special property-man, he holding the balance beyond his own interest in trust for the general owner, yet, on a like suit between him and the general owner, the latter shall be entitled to a deduction of the value of his interest by the jury, when they come to the assessment of damages. The value of the plaintiff's interest is the worth of his special property in the article. Story on Bailm. 204, 5, § 303. *Heydon & Smith's case,* 13 Co. R. 69. *Lyle* v. *Barker,* 5 Bin. 460 It is said in Coke's R. to be the better opinion in 11 H. 4, 23, "that he who hath a special property in goods, shall have a general action of trespass against him who hath the general property, and, upon the evidence, *damages shall be mitigated;* but clearly the bailee or he who hath a special property, shall have a general action of trespass against a stranger, and shall recover *all in damages,* because he is chargeable over." This distinction is cited and approved by Tilghman, Ch. J. in *Lyle* v. *Barker.* Then taking up

the relation which we have supposed to exist here; the pledgor sues the pledgee for a wrongful conversion. The latter is accountable, but the debt shall be recouped in damages. Story on Bailm. 236, 7, § 349. *Jarvis* v. *Rogers*, 15 Mass. R. 389. But this, it seems must be taken of a wrongful conversion, where there has been no tender by the pledgor; for, if he tender the debt, the pledgee shall be left to his remedy by demand and action for the money; and must account for the general value of the goods. On tender, the special property of the pledgee ceases, and he becomes a wrong doer, and is accountable as a stranger. *Ball* v. *Stanley*, 3 Yerg. 199, 201. It has been suggested that an act totally inconsistent with the bailment, *e. g.*, a tortious sale by the pledgee, would equally revest the absolute property in the bailor. *Samuel* v. *Morris*, 6 Carr. & Payne, 565. But the rule of damages was not mentioned. The full value would in some instances be unjust even where the action is in favor of the bailor; and, in most cases, where it is by the bailee. In the case of a pledge, the bailee who has wrongfully converted the property, still has a remedy by action for the debt and may therefore save himself, though compelled to pay the full value. But this is a circuity which it is desirable to prevent; and it may be done by recoupment, where there is a privity between the parties. The question before us is, I think, the same as if the replevin had been brought against the immediate pledgor. Judgment for a return would have left the whole mortgage debt still due; but a verdict and judgment for the qualified value in the hands of the defendant, would have been an application of the residue, *pro tanto*, in discharge of the debt, which might have been shown by way of defence in an action against the mortgagor. *Forbes* v. *Parker*, 16 Pick. 462, will, I think, be found fully to sustain this view of the case.

The property of the defendant was temporary at best, and the cause was not brought to trial till after it had ceased, unless the first instalment had been paid. If it had not, then the defendant could not have had a return, *Lewis* v. *Train*, 4 Pick. 168, and the authorities there cited, and was not en-

titled to the value for that reason. The statute gives value only where the defendant has the right to a return. The point, however, was not made; if it had been, payment or tender might have been shown in reply. Still the case cited and the statute are material to show that the law, in the judgment which it gives, keeps an eye on the nature of the defendant's property. In *Lewis* v. *Train*, the defendant's property having expired pending the suit, he could not take judgment for a return, though he was entitled to that when the action was brought; and several cases cited in that cause are to the same effect. This is obviously just. It is impossible to make the substitute provided by the statute equally so, unless in assessing the value we maintain the principle, by giving general value where the avowants' property is absolute; a qualified value where it is special; and only costs, as in *Lewis* v. *Train*, where it has ceased.

The judgment is reversed; a *venire de novo* to go from the court below; the costs to abide the event.