MATTISON, plaintiff in error, agt. BAUCUS, defendant in error.

*Questions discussed.*

1. Whether, in an action of *trover*, brought by a constable, against a defendant who claimed to take the property by virtue of an attachment and levy, the constable could recover the full value of the property, or only the amount of the execution in his hands, and interest thereon?

2. Whether, in an action of *trover*, by a constable, claiming the property by virtue of a judgment, execution, and levy, the defendant could question the validity or regularity of the judgment and execution before showing some right to the property in question?

3. Whether proof of what plaintiff said when he made the levy—having been called as a witness to prove the loss of the execution delivered to him—was properly admitted?

4. Where the plaintiff, to prove a conversion, showed that the defendant directed one Allen to sell the goods—whether the defendant should have been permitted to show, in the same conversation, he said that the goods had been seized by an attachment in his favor, under which he had obtained judgment and execution?

5. Where a chattel mortgage, containing a condition that the mortgagor should at all times permit the mortgagee, his executors, &c., to have and possess, occupy and enjoy the property mortgaged, upon demand by him or them—whether, where the mortgagee having possession of the property under the mortgage, the debt secured thereby not being due, the mortgagor has such an interest in the equity of redemption as can be sold on execution?

THIS was an action of trover, originating in a justice's court. The plaintiff in error was a constable, and claimed to have a special property in the goods converted by the defendant in error, by virtue of a levy made by him as such constable on an execution in favor of *Lewis Buffit* v. *John Foster*.

The plaintiff in error, as such constable, (and by virtue of his levy claiming the goods,) brought this suit against the defendant, and the same was tried before *Levi Nelson, Esq.*, justice of the peace, on the 27th day of September, 1839. The plaintiff then recovered the full value of the goods, viz. :—

Damages, . . . . . . . . . . . . $41.83
Costs, . . . . . . . . . . . . . 2.98
                                        ————
                                        $44.81

Mattison *agt.* Baucus.

The defendant appealed to the court of common pleas of Rensselaer county.

On the trial of the cause in the court of common pleas, the plaintiff proved, by *Levi Nelson*, the justice before whom the cause was originally tried, that on the 8th day of July, 1839, he entered a judgment in favor of Lewis Buffitt, against John Foster, for $19.63 damages, and $1.03 costs. That the suit was commenced by summons; that Foster appeared by attorney; that the same day he rendered judgment and issued an execution, and delivered the same to Reuben Mattison, the constable and plaintiff, on the oath of Lewis Buffitt, the plaintiff in said judgment.

The counsel for the defendant offered to prove by the said justice, that the plaintiff in the execution swore to no facts or circumstances required by statute to entitle him to have execution till thirty days after judgment. The court overruled the offer, and defendant's counsel excepted.

The justice then testified that his docket did not show when the summons was issued; that it did not show that the attorney who appeared for Foster had any authority to appear; that the justice did not swear the person appearing as attorney, as to his authority to appear; nor did the justice know that Buffitt, the plaintiff in the execution, consented to the appearance in behalf of defendant.

But the court decided that the defendant could not question the validity of the judgment, until he showed a right to the property in question: and the defendant's counsel excepted.

Plaintiff then proved, by *Zachariah Lyon*, that plaintiff, in July, 1839, called at his house; said he had an execution in favor of *Buffitt* v. *Foster.*

The declaration of the plaintiff was objected to, and the objection overruled, and the defendant's counsel excepted.

Witness then testified that plaintiff then came there and inquired if witness had any of Foster's property, and that he, plaintiff, claimed to levy by virtue of an execution in favor of Buffitt. I pointed out to him the property, (describing certain household furniture.) George B. Allen, a constable of Lan-

singburgh, afterwards took that property away from his house, and witness thinks defendant was with him. Allen afterwards sold it.

Witness further testified that Allen, the Lansingburgh constable, attached the property before the plaintiff came to his house to levy. Part of the property was at his house, and part at Foster's house, when Allen attached it.

The property was all levied upon by Allen and receipted by witness before the plaintiff came to make a levy; witness had a mortgage on all the property, given by Foster (the defendant in the execution,) before the same was taken by either of the constables; witness was in the act of removing it to his house, (Foster having absconded,) before Allen came to my house; I had some of the property at my house before Foster went away; Allen assisted my boy in bringing the remainder of the articles, and all were at witness's house before plaintiff came there to make a levy.

Witness further testified, that after the suit was commenced, and about the time it was first brought to trial in the court of common pleas, he sold and assigned his mortgage to Buffitt, the plaintiff in the execution against Foster, (the execution under which plaintiff claims by virtue of his levy.)

*Lemuel S. Finch* proves that Allen, the Lansingburgh constable, (who had first levied upon the property under attachment,) sold it; that defendant directed him to sell.

The defendant offered to prove, that at the time he so directed Allen to sell, he said, at the same time the goods had been seized by an attachment in his favor under which he had obtained a judgment and execution—

Plaintiff objected to this evidence, and the court sustained the objection, and defendant excepted.

The mortgage from John Foster to Zachariah Lyon (of the property in question) was then read in evidence, and the assignment thereof from Lyon to Buffitt, the plaintiff in the execution. Mortgage dated the 11th June, 1839.

The mortgage was given to secure the sum of $48.16, payable in six months, and contained a clause which allowed the

41

Mittison *agt.* Baucus.

mortgagee, his executors, &c., upon demand, to have and possess, occupy and enjoy, the property mortgaged.

The assignment to Buffitt, dated 25th January, 1840, (long after the judgment rendered before the justice.)

*Zachariah Lyon* further testified, that the mortgage was given for a *bona fide* debt, and remained wholly due and unpaid at the time he assigned to Buffitt.

The defendant's counsel in the court of common pleas then moved for a non-suit upon the following grounds :—

1. That it appearing, from the plaintiff's own evidence, that the property was seized by an attachment previous to the pretended levy of plaintiff, it was incumbent upon him to show the attachment was void.

2. That the property in question was mortgaged to Zachariah Lyon, and claimed by him, or in his behalf, under the mortgage at the time of the sale, and that no other claim than that under the mortgage was interposed.

3. That no conversion by defendant was proved.

4. That the plaintiff never acquired any possession by his pretended levy, so as to enable him to sustain trespass or trover. The actual and legal possession was in Doctor Lyon, under a mortgage from *Foster*; the validity of that mortgage cannot be questioned by the plaintiff, who at most could have but a special property, subject to the direction of Buffitt, the plaintiff in execution, by virtue of a levy under which the plaintiff brings this suit. Buffitt, by taking an assignment after this suit was brought, admits the validity of the mortgage—admits the legal title and possession in Doctor Lyon.

The court of common pleas overruled the motion for a non-suit, and decided that a levy and conversion had been proved—that inasmuch as Buffitt had obtained an assignment of the mortgage, which he had a right to do, to quiet his title without claiming under it, and as there was no other legal claim to the property, the plaintiff acquired a special property that enabled him to sustain this action, if Buffit was disposed not to enforce his mortgage.

To this decision the defendant's counsel excepted.

The defendant's counsel then insisted that as the plaintiff, under the ruling of the court, had only a special property by virtue of his levy, he was entitled to recover no more than the amount of the execution in his hands, and interest thereon. But the court decided that the plaintiff was entitled to recover the full value of the property sold by Allen's directions, with interest thereon from the day of sale. To which decision of the court the defendant's counsel excepted.

The court of common pleas then directed the jury to find a verdict for the plaintiff for $56.47, the value of the property sold, and interest from the day of sale ; for which amount the jury found.

The defendant's counsel excepted to the said direction of the jury by the court.

The defendant prosecuted a writ of error to the supreme court, and the judgment of the court of common pleas was reversed.

The opinion of the supreme court was as follows:—

BEARDSLEY, Justice. The court erred in deciding that the plaintiff was entitled to recover the full value of the property. (*Spoor* v. *Holland*, 8 *Wend*. 445.) There are various other points made in the case ; but, without passing upon them, the judgment must be reversed, on the ground that the court erred upon the question of damage.

The plaintiff prosecuted his writ of error, to reverse the decision of the supreme court, in the court for the correction of errors. The cause was in readiness for hearing before the court of errors was abolished, and now comes before the court of appeals.

The cause was submitted upon printed points and arguments.

*T. C. Ripley, attorney and counsel* for plaintiff in error.

It is insisted that the supreme court erred in the application of the authority (*Spoor* v. *Holland*, 8 *Wend*. 445) to this

Mattison *agt.* Baucus.

case, and that its judgment was erroneous for the following reasons :—

*First.* The constable is liable to the defendant in the execution for all the property he takes, and should therefore recover the whole amount of the *wrong-doer.* (*See Russell* v. *Butterfield,* 21 *Wend.* 303, *from the middle of the page to the bottom ; also reporter's last note to the same case.*) The rule established in that case is sustained by principle and authority; and the case of *Spoor* v. *Holland,* referred to in the supreme court, is perfectly consistent 'with it.

In that case, Holland was the owner of the property after the executions were satisfied. The defendants in the execution sold the property in the brick to one Parsons, and Parsons sold to Holland, against whom the constable brought the suit. If these transfers were void as to judgment creditors, they were valid between the parties. The defendant, Holland, was entitled to the brick, as against *Freeman & Gurney,* the defendants in the original executions ; and it follows, as against him, (Holland,) the special property man could only recover the value of his special property ; Holland then being the general owner.

This comes within the rule (21 *Wend.* 300) laid down in these words : "In *trover* or *trespass,* if the property be taken by a *stranger,* the special property man may recover the whole value, holding the balance, beyond his own interest, in trust for the general owner ; but if the suit be against the latter, he is entitled to a deduction of the value of his interest."

In *Spoor* v. *Holland,* the court decided that the general owner was entitled to a deduction of the value of his interest, which was right. In this present case, the supreme court decided that, as against a *stranger* and a *wrong-doer,* the special property man could recover only the amount of his interest ; which we hold is against reason, principle, and authority, and a manifest misapprehension of the principle decided in *Spoor* v. *Holland.*

*Second.* The first point disposes of the case, as sent here by the supreme court ; and, so far as correcting the decisions of

Mattison *agt.* Baucus.

th'at court is concerned, the decision of that point covers all the supreme court decided. (*See Error Book, p.* 22.)

Should this court decide to review points not decided by the supreme court, the following are presented by the *Error Book*.

*Third.* The first exception was to a decision in the court below, that the defendant here could not show that Buffitt did not swear to any facts to obtain the execution against Foster. (*See Error Book, p.* 11.)

This decision was correct,—

1st. Because the defendant below had shown no right to the property, was not a party to the judgment, nor did he offer to connect himself with any outstanding title. (*Duncan* v. *Spier*, 11 *Wend.* 54; *Daniels* v. *Ball, id.* 57.) As against him, the execution alone was sufficient. (*Holland* v. *Spoor*, 8 *Wend.* 445, *and cases there cited.*)

2d. If the execution was irregularly issued, the defendant in the execution alone can avail himself of the irregularity. (2 *Hill*, 364; *Graham's Pr.*, 2d ed., 364, *and cases there cited.*)

3d. It nowhere appears in the case that Foster was either a freeholder, or an inhabitant of the county, having a 'family; and consequently an execution might issue without oath. (*See* 2 *R. S.* 2d ed. 178, § 133.)

4th. Foster, having absconded, was of course a non-resident. (*See Error Book, p.* 13.)

5th. The execution alone was sufficient as against a wrong-doer. (*Spoor* v. *Holland*, 8 *Wend.* 445.)

*Fourth.* The next is, that the proof does not show a valid judgment, coupled with the remark, that the defendant could not question the validity of the judgment till he showed some right to the property in question. (*See Error Book, p.* 12.)

This decision upon the point raised by the counsel for the defendant, was correct.

The plaintiff had shown himself possessed of an execution issued by a justice of the peace on a judgment rendered after a personal service of a summons, and an appearance of the defendant, Foster, by an attorney. The defendant's counsel in

---

Mattison *agt.* Baucus.

---

this cause claims that the judgment was *void*, because the justice did not take proof of the authority of the defendant's attorney. In answer, we say that the plaintiff, Buffitt, did not object, which is equivalent to admitting. (*Ackerman* v. *Finch*, 15 *Wend.* 652.)

The statute being for his benefit, he had a right to waive it.

The personal service of the summons alone gave the justice jurisdiction. (*Bromley* v. *Smith*, 2 *Hill*, 517.)

Under this state of facts, the court were undoubtedly right in saying this defendant, Baucus, could not attack that judgment collaterally, without showing some right to the property in question. The remark of the court was, intended to limit their decision so far as to allow the defendant, on proving title to the property, to show that the judgment might then be attacked, on the ground that it was rendered by collusion, in fraud of the rights of other persons.

The decision went the length that a judgment was proved binding between the parties, and that third persons could not question its validity, unless they had an interest in the property affected by it.

No other objection to the sufficiency of the proof was taken, and consequently the pleadings are not inserted in the bill of exceptions.

*Fifth.* The next exception is to a decision that the loss of the execution was sufficiently proved. (*See Error Book*, 12.)

The plaintiff below swears positively to the loss of the execution; but, on cross-examination, he stated some facts from which he suspected the defendant, Baucus, had stolen it. But the court very properly held, there was no sufficient ground for the suspicion, and we insist that a party is not entitled to notice to produce a paper feloniously obtained, unless he admits that he has possession of it.

2d. If he had such possession, he knew that it was the foundation of our right to recover, and was bound to produce it without notice. (1 *Phil. Ev.*, *by Cow. & Hill*, 442.)

*Sixth.* The next exception is to the decision admitting

proof of what the plaintiff, Mattison, said, when he made the levy. (*See Error Book, p.* 12.)

This was a part of the *res gestæ,* and was clearly admissible. Declarations accompanying acts are the strongest evidence to show intention; and, when proved by a third person, are better evidence than the naked return of the party on the back of an execution.

The execution in this case being lost, it became necessary to prove a levy by parol; and the acts and declarations of the constable are both essential to show the intent with which the plaintiff seized the property, in lieu of the usual endorsement of levy upon the execution.

*Seventh.* The next exception was to a decision against an offer on the part of the defendant to prove that he, when he directed Allen to sell the property in question, further said the goods had been seized by an attachment in his favor, under which he had obtained a judgment and execution. (*See Error Book, p.* 14.)

1st. This was objected to on the ground that an attachment, judgment, and execution, could not be proved by parol.

2d. That the direction proved was not the admission of a fact, but a *fact itself,* and it was no more competent for him to prove his sayings as a justification for that act, than if he had sold the property himself, instead of directing another to sell it. And I think no one will pretend, that if he had sold the articles himself instead of directing another to do it, that his *saying* he sold by virtue of an execution, would dispense with the production of that process.

3d. That it did not tend to qualify the proof offered on the part of the plaintiff, but related to new matter which could not be proved by parol evidence. (*Gary* v. *Nicholas,* 24 *Wend.* 351, 352; *Summerset* v. *Adamson,* 1 *Bing.* 73.)

Under these objections, the evidence was properly excluded.

*Eighth.* The defendant asked for a nonsuit;

1st. That, as it appears by the evidence of the *plaintiff* that the property was seized by an attachment previous to the pre-

tended levy of the plaintiff, it was incumbent on him to show that the attachment was void. (*See Error Book, p.* 17.)

This is not true in point of fact. The sole evidence on that subject was given by Dr. Lyon, in what purported to be a cross-examination, but was in fact an examination as to new matter by the defendant. (*See Error Book, p.* 13.)

1. It was not true that the *plaintiff* proved that the property was seized at all.

2. It was not true that there was proof that the property was seized by virtue of an attachment. The witness uses the terms attached and levied as synonymous terms, but does not state by what kind of a process Allen even claimed to levy.

This evidence was perhaps then proper as one link in a chain to make out a defence. It showed which constable had priority, in case both had legal process. And, had it been followed up by evidence of a valid attachment, regularly issued by a court of competent jurisdiction, against the property of *John Foster*, and proof that the defendant claimed under that title, it might have amounted to a defence. To hold that a constable is entitled to a man's property, without requiring him to show that he has legal process, would be a dangerous innovation, and I trust will not be adopted by this court.

Most clearly the plaintiff was not bound to prove a process void, when there was no evidence of its existence. It does not appear that any court had issued any process between any parties against any man's property, that had been used as a pretence for seizing the property in question. They require the plaintiff to prove that void, which was not proved to exist, and which in fact did not exist.

If John Foster had sued Allen in trespass, for taking this property, and proved the taking by Dr. Lyon in the words used in this case, there can be no doubt but he would be entitled to recover, unless the constable produced process in justification; and if this be so, surely Baucus cannot justify under Allen's title, without showing enough to justify Allen, especially as he does not connect himself with it, which would be necessary, if *Allen's* title was good.

There is no necessity for departing from the ordinary rule requiring a party to produce the best evidence in his power, which in this case is the process itself. If it ever existed, he can produce it or account for its absence. If it never did exist, (which was the case,) nobody suffers by requiring its production.

2d. Ground for non-suit sets up a mortgage in Dr. Lyon, and that no other claim was interposed at the time of sale.

As it no where appears that the plaintiff knew of the sale, he was not required to be there to set up his title.

The point has long been decided, that in this action the defendant cannot set up title in a third person without connecting himself with it. (*Duncan* v. *Spier*, 11 *Wend.* 54; *id.* 57, *note.*) It follows, therefore, that the Lyon mortgage is no defence for Baucus.

The property being liable to seizure, and being seized by virtue of the execution, the plaintiff, or the owner of the judgment, had a right, at any time, to get rid of any lien upon it, by showing it fraudulent, by paying it off, or by taking an assignment as a creditor having a junior lien; and having done so, it would be doing violence to every principle of justice to allow a wrong-doer, without claim of right, to use either of these titles to defeat the other.

The 3d ground for non-suit is, that no conversion is proved.

A conversion was proved. (*Error Book, pp.* 13, 14.)

The 4th ground for non-suit was in these words :—

" That the plaintiff never acquired any possession by his pretended levy, so as to enable him to maintain trespass or trover; the actual and legal possession was in Dr. Lyon, under a mortgage from Foster. The validity of that mortgage cannot be questioned by the plaintiff, who, at most, could have but a special property, subject to the direction of Buffitt, the plaintiff in execution, by virtue of a levy, under which the plaintiff brings this suit. Buffitt, by taking an assignment of that mortgage after suit brought, admits its validity—admits legal title and possession in Dr. Lyon—and cannot claim title under the assignment."

The main question raised in this point by the defendant's counsel is, What effect had the assignment to Buffitt by Dr. Lyon, upon the parties in this cause?

It strikes me that it has none whatever. The present plaintiff had levied upon the property, with Lyon's assent, as the property of John Foster—Lyon making no claim. (*Lyon's testimony, Error Book, pp.* 12, 13.)

Buffitt bought the mortgage for ten dollars. (*See assignment in Error Book, p.* 16.)

This assignment was taken to enable us to use Lyon as a witness to prove our levy, as the question whether he was an interested witness was embarrassing—we supposing that we were entitled to recover the whole value of the property, as against the defendant, a wrong-doer, and that the owner of the mortgage might be entitled to the surplus, after satisfying our execution, he then being the general owner, even if the mortgage was void as to judgment creditors; he therefore would be directly interested in swearing to increase the fund, as he would be entitled to the surplus.

We, therefore, took the assignment, not to strengthen our claim of title, or to weaken it, but to restore the competency of a witness; and we humbly insist that by doing so we made no admissions as to its validity against our levy: that the right of the constable was not diminished, and that whether said mortgage was void as against judgment creditors or not, was not properly in issue in this cause.

If it was properly in issue, and the question was tried, the evidence showed only that it was given for a *bona fide* debt; but did not show that it was not given to hinder and defraud other creditors, and therefore void : which the possession of Foster, after the mortgage was given, proves.

We insist that the court were right in overruling the motion for a non-suit.

There being no conflicting evidence, the court were right in saying a levy and conversion were proved; and also that we were entitled to recover the full value of the property under the circumstances; and, although the judge made some remarks

about the mortgage that may not have been well considered, the above are all that he then decided; and we insist, that whether Buffitt was or was not disposed to enforce his mortgage, we were entitled to recover the full value of the property taken from us by a wrong-doer, holding the amount of our special property, and accounting to the general owner for the balance; and our recovery would bar the general owner.

*Ninth.* The direction of the court, that we were entitled to the value of the property, with interest from the day of sale, was correct.

1st. The value of the property has already been considered. Interest was properly allowable.

2d. If not technically correct, it was just and equitable, and the counsel for the defendant did not ask to have the question of interest submitted to the jury.

3d. No specific exception was taken to that part of the decision; and as the other part of the direction had been contested throughout, it was but fair for the court to suppose he meant to except to the measure of damages, and not particularly to the allowance of interest.

In reply to the argument submitted on the part of the defendant, it is only necessary to state, as to each and every of the pretended admissions and concessions, that they are not sustained by the Error Book—that they were not made on the trial of the cause—that they were never made by the plaintiff or his counsel in the common pleas or elsewhere—that they are not now made, and that they are imputed admissions, utterly without foundation, and originating in the mind of the counsel, and not in the facts of the case.

It is true that we then claimed, and now claim, that we showed a regular execution upon a valid judgment; and that we then insisted, as we now insist, that the defendant, who was a stranger and a wrong-doer, cannot question the regularity of the proceedings behind the face of the execution. That the defendant could not question our right to the possession of the property on which we levied, without connecting himself in some way with that property; and we having shown a regular

Mattison *agt.* Baucus.

judgment, *binding between the parties*, the court of common pleas were right in deciding that such a judgment could not be attacked collaterally by the defendant, without showing some right to the property claimed under it, in himself.  He neither introduced, nor offered to introduce, any process to justify his conversion of the property, but claims a right to hold it without doing so.

The defendant's counsel insist that they were claiming the property under an attachment in their favor.   The plaintiff's counsel have not admitted that any such process ever existed. No offer was made on the trial to prove the existence of such a process, or to justify under it; and no witness mentioned the name of any such process; and all the counsel says about its existence, is a bold assumption of a fact which does not exist; and he evidently hopes that his perpetual repetition of the fact will induce this court to presume its existence, without examining the Error Book.

The insinuation that the attorney who appeared for Foster in the suit of *Buffitt* v. *Foster*, may have colluded with Buffitt, is sufficiently answered by saying that fraud is never presumed, but must be proved; and that if the appearance of the defendant is to be presumed fraudulent without proof, few records of judgment would be *prima facie* evidence.

Offensive as this insinuation is, it should be pardoned, perhaps, in counsel who would try to prove his own client stole our execution—who would claim that his proof was sufficient to establish that fact, and then insist he was entitled to notice to produce it, and finally excepting to the decision of the court, upon the ground that they were more slow than himself in believing in the guilt of his client.

We insist that the mortgage, and all evidence relating to it, was irrelevant, so far as the defendant was concerned, because he did not connect himself with it : and we still insist, whether said mortgage was good, bad, or indifferent, was a question to be settled between the plaintiff in the execution and the owner of the mortgage ; and they having adjusted that matter, this defendant cannot legally interfere to defeat that settlement.

Finally, we insist that the plaintiff established a good cause of action—that the defendant did not show any defence—and that, consequently, the judgment of the supreme court should be reversed, and that of the common pleas affirmed.

*Job Pierson, attorney and counsel* for defendant in error.

*First.* Mattison, the plaintiff, at the time of the pretended levy, had no right to the possession of the property.

1. Because the property was then in the actual possession of Doctor Lyon, under a mortgage sworn to be valid—admitted to be valid by Buffitt, the plaintiff in the execution, who purchased the mortgage after suit brought, thereby admitting the entire title of Lyon at the time of the levy, and at the time plaintiff recovered the judgment in this suit. (2 *Harr. Rep.* 1.)

2. Because the property in question had been levied upon by virtue of an attachment, before the pretended levy under plaintiff's execution. (*Dubois* v. *Harcourt*, 20 *Wend. R.* 41.)

This case alone is decisive of the cause in controversy. The sheriff, on the 4th of August, 1834, had levied upon part of the property of the defendant in the execution, and made an inventory of some wood at a distance from the house : on the 5th of August an attachment seized the wood which was inventoried by the sheriff: on the same 5th of August, and before the attachment was levied, one Ray, a constable, levied on the same wood.

The court of common pleas decided,—

(1.) That an attachment levied, has preference to an execution under which a levy has not been made.

(2.) That to maintain trover, plaintiff must have either an absolute or special property in the goods. The court doubt whether the officer had even a special property. But they decide that it is perfectly clear that the officer, the plaintiff, had no right to the possession at the time of the conversion by the defendant. It is impossible (say they) to give each officer the legal control of the property, consistent with law or the rights of the party making the first levy.

*Second.* The court of common pleas erred in not allowing the defendant to prove that the execution, issued by the jus-

tice, was invalid and prematurely issued. The plaintiff, when he seeks to make out his title to property, must prove that all the proceedings are regular. (*Earl* v. *Camp*, 16 *Wend*. 562; 2 *R. S.*, *p.* 178, §§ 133, 134, 135.)

Execution could not regularly issue, without oath.

*Third.* There was no evidence that the justice had jurisdiction in the cause of *Buffitt* v. *Foster*. It did not appear when the summons was issued, or when it was served. The appearance of a person purporting to be an attorney of Foster, does not amount to a waiver, because there was no authority of the attorney proved. Such authority must in all cases be proved, unless admitted; and it was not admitted on the trial of the cause. (*Wheeler* v. *Sampson*, 14 *John. R.* 481; 2 *R. S.* *p.* 233, § 45.)

*Fourth.* The court of common pleas erred in allowing the declarations of the plaintiff, as to his levy, to be received in evidence.

*Fifth.* The court of common pleas erred in not permitting the defendant to give evidence of the whole of the declarations of the defendant, made at the time when the plaintiff proved a part of them.

To prove a conversion, the plaintiff showed that defendant directed Allen to sell the goods. Defendant offered to prove that, in the same conversation, the defendant said that the goods had been seized by an attachment in his favor, under which he had obtained judgment and execution; and that he told him to sell under the execution.

*Sixth.* The court of common pleas erred in refusing to nonsuit the plaintiff.

1. The plaintiff himself proved that the goods were seized by the defendant's attachment previous to his levy; he was bound, therefore, to prove the attachment invalid; otherwise the defendant's title was perfect.

2. The property in question was mortgaged to Dr. Lyon, and the property was shown to be of no more value than the mortgage. The mortgage is admitted to be valid, by the plaintiff in the execution having purchased it after this suit was brought.

Mattison *agt.* Baucus.

*Seventh.* The court of common pleas erred in deciding that the plaintiff had any special property in the goods; if he acquired any, it was merged by the purchase of the mortgage by Buffitt, the plaintiff in the execution, who had a right to control it and to merge it.

If the plaintiff is allowed to recover the value of the property, as he has done, Buffitt may also rocover, in trover, the full value of the property against the defendant, under the mortgage assigned to him by Lyon.

*Eighth.* The court of common pleas erred in directing the jury to find a verdict for the full value of the property.

If plaintiff was entitled to recover at all, he should have recovered no more than the value of the property beyond the mortgage, which was nothing. And it is certain he should have recovered no more than the amount of the execution in his hands. (*Russell* v. *Butterfield*, 21 *Wend.* 300; *Spoor* v. *Holland*, 8 *Wend.* 445; *Linville* v. *Black*, 5 *Dana*, 176; *Chamberlin* v. *Shaw*, 18 *Pick.* 278; *White* v. *Webb*, 15 *Conn. Rep.* 302.)

*Ninth.* The court of common pleas erred in deciding that a conversion was proved on the part of defendant, and in directing the jury to find a verdict for the plaintiff to the value of the property pretended to be levied upon by the plaintiff, with interest thereon from the time of the sale.

The conversion was a question of fact, that ought to have been submitted to the jury. The allowance of interest should have been left to the jury, as a matter within their discretion. The court would not submit either question to the jury. (*See* pages 17 *and* 18 *of Error Book ;* 5 *Car. & Payne*, 625 ; 2 *John. Rep.* 280 ; 8 *John.* 446.)

The grounds upon which the plaintiff sought to sustain his suit, present a tissue of contradictions.

1. He conceded that he must prove the regularity of his judgment and all subsequent proceedings, in order to make out even a special claim to the property in question in the constable. He attempted to do so. He proved by the justice a bare entry of a judgment; that the suit was commenced by sum-

mons; that the defendant, Foster, (who the plaintiff admits had absconded,) appeared by attorney.

But when the defendant (who, by the pleadings in the cause, was claiming the property under an attachment against Foster,) offers to prove that the execution was irregularly issued; the plaintiff objects, and the court of common pleas sustains the objection.

The defendant then proceeded to show, and that, too, by the docket of the justice, that it did not appear that the summons was regular; that the docket did not show that it was regularly issued, returned or served; and that Foster, who had absconded, had appeared by attorney, without any evidence of authority to appear. Indeed, it appearing in evidence that the defendant Foster had absconded, it may be inferred that an attorney appeared who colluded with Buffitt, to enable him to obtain a judgment. The case of the 15 *Wendell*, 652, has no application, because Foster had absconded, and has never since sanctioned the acts of his pretended attorney.

The court decided that the defendant could not question the validity of the judgment, until he showed a right to the property.

Thus the court of common pleas overruled the cases of *Earl* v. *Camp*, 16 *Wendell*, 562; *Horton* v. *Hendershot*, 1 *Hill*, 118; *Dunlap* v. *Huntting*, 2 *Denio*, 643; and decided, in effect, that plaintiff need not show that the justice had jurisdiction, and need not therefore show that the plaintiff must prove what he commenced attempting to prove, viz.: the regularity of his proceedings. And the position is actually taken by the plaintiff, that if his judgment and execution were irregular and void, the defendant in the execution can only take advantage of it; but the defendant in error, who was defending under an attachment against the same defendant, cannot; and that the defendant in error, unless he shows a valid attachment, cannot impeach the plaintiff's judgment.

It perhaps did not occur to the plaintiff, that if nobody but Foster, the defendant in the *execution*, could complain of its invalidity, that it would follow that nobody but Foster, the defendant in the *attachment*, could complain of its validity.

Again, the plaintiff contended, and successfully, with the court of common pleas, that the plaintiff could give in evidence his own declarations to sustain his suit. And he also contended successfully with the same court, that the plaintiff could give in evidence a part of the declaration of the defendant, to prove a conversion and the defendant could not prove the remaining part of the same declaration, for the purpose of disproving it.

Again, the plaintiff claimed the property under a judgment and execution, both of which were void—conceded to be so— but alleged that the defendant in this suit could not question the validity.

The defendant in this suit claimed the property under an attachment, by virtue of which the property in question was seized before the pretended execution in favor of Buffitt was levied.

Notice that the defendant claimed the property under an attachment, was given in the pleadings and proceedings on the trial before the justice.

Evidence was given that the property was attached by Allen, the constable, before the plaintiff in this suit came to make a levy, and that Lyon, the mortgagee, receipted it to Allen before the execution was levied. No objection was made to this evidence. The validity of the attachment was not questioned on the trial. The mortgagee of the property, having it in possession, conceded the validity of the attachment, by receipting the property. Buffitt, the plaintiff in the execution under which the plaintiff seeks to recover, by virtue of his levy, conceded the validity of the mortgage on this property, to an amount of but a trifling value, if any, beyond the mortgage : he conceded the validity of the attachment, by taking an assignment of the mortgage with the attachment upon it, with the property receipted under the attachment. He conceded that his own execution was invalid by purchasing the mortgage after he had recovered a judgment in the justice's court, in this cause, though he evidently hoped, and perhaps was advised, that if his void judgment and execution failed him, he

42

Mattison *agt.* Baucus.

could, on appeal, sustain this suit under a valid mortgage, of which he became the assignee, after he discovered his difficulty, and long after this suit was commenced.

That he had been advised, is very probable; because the court of common pleas (*vide Error Book, p.* 17,) gravely decided that—

" A levy and conversion had been proved, inasmuch as Buffitt had obtained an assignment of the mortgage, which he had a right to do, to quiet his title without claiming under it; and as there was no other legal claim to the property, the plaintiff acquired a special property that enabled him to sustain this action, if Buffitt was not disposed to enforce his mortgage." ! ! !

That is to say, the plaintiff acquired no claim to this property, by virtue of his levy under Buffitt's void judgment and execution. The judgment he recovered before the justice in this suit, was therefore invalid; but inasmuch as before the trial in the court of common pleas, on appeal, Buffitt, the plaintiff in the execution, had quieted his, Buffitt's, title; therefore, the constable acquired a special property, which he would not have had if Buffitt had not purchased the mortgage; nor could he have sustained this suit if Buffitt had not quieted his, Buffitt's, title, and was not disposed to interfere.

The judgment of the supreme court, reversing the judgment of the court of common pleas, should be therefore affirmed, with costs.

DECISION.—*Judgment affirmed.   For affirmance*—JEWETT, BRONSON, GARDINER, RUGGLES and GRAY.   *For reversal*— JONES, JOHNSON and WRIGHT.

NOTE.—GARDINER, J.   *Held,* that the interest of Foster, the mortgagor and judgment debtor, was a right of redemption *only*—a mere chose in action; not the subject of levy and sale upon execution, unless united with a right to the possession for a definite period. (3 *Wend.* 500.) By the express terms of the mortgage, the mortgagee " was at all times, upon demand, entitled to possess, occupy, and enjoy " the property mortgaged, and the case showed that he had taken and held possession at the time of the levy.

The levy, therefore, by the plaintiff was wholly inoperative.   It gave no lien upon the property, and consequently no right to maintain the action.

*Reported* 1 *Comstock,* 295.