## Smith W. Fowler v. Richard Hoffman.

*Lost instrument: Copy: Secondary evidence: Weight of evidence.* A copy of what is said to be a copy of an original, with which it was never compared, and from which it is not shown to have been taken, can have no claims of itself to admission as secondary evidence; but when a witness testifies from recollection that it is a copy, it should be received, its weight being left to the jury.

*Lost instrument: Copy: Secondary evidence: Proof of contents: Error cured.* Where, however, such a copy, thus verified, has been erroneously rejected, the error will be cured by allowing the same witness who verified such copy to testify from recollection to the contents of the original, where he was able to state it fully and almost in the very language of such rejected copy.

*Chattel mortgage: Provision for insurance: Amount due.* The word "due" in a stipulation contained in a chattel mortgage, providing for insurance for the mortgagee's benefit, in a sum equal to the full amount *due* on the mortgage, is construed to be synonymous with "owing," and to contemplate insurance to the extent of the amount remaining unpaid.

*Chattel mortgage: Stipulation for insurance: Breach: Insurance by mortgagor.* The procuring of insurance by the mortgagee, after default by the mortgagor under such a stipulation, does not satisfy the stipulation, or so enure to the benefit of the mortgagor as to cure or discharge the breach on his part.

*Special questions to jury: Practice.* It is not error to decline to propound to the jury special questions, which either have no evidence to warrant them, or relate to points not in dispute or to facts which were in no way conclusive; good practice requires that the questions put should be few and simple, pertinent and material to the issue, and such as the jury would be compelled by the evidence to pass upon.

FOWLER *v.* HOFFMAN.

*Practice : Charge to the jury: Requests.* The rejection of the whole of a long list of requests to charge is not error, where the court in a connected charge of his own covers the whole case and lays down the law correctly, and responds to all of such requests which are relevant or are based on any evidence.

*Replevin: Special interests: Chattel mortgage : Lien for amount to become due.* In replevin by a mortgagee, under a mortgage not yet all due, a ruling that if there was no continuing breach of the mortgage at the time suit was brought, defendant would be entitled to recover the full value of the property, is erroneous under our statute (*Comp. L. 1871,* § 6754), requiring a special finding in case it appears that either party has only a lien upon, or special property or part ownership in the chattels, and that such judgment shall be rendered as shall be right between the parties; such a ruling leaves out of consideration the rights of the mortgagee, on account of the amount still to become due on his mortgage.

*Newspapers : Stipulation to give space to another: Construction : Ridicule of proprietor.* Any stipulation by the conductor of a paper to give space to another must be understood to be subject to the implied condition that the space should not be employed to subject the conductor himself 'to ridicule and disgrace; the use should be such as, considering the position of the party agreeing to allow it, could be fairly regarded as embraced by the understanding.

*Newspapers : Stipulation not to publish matter detrimental to another, his business or reputation: Construction : Uncertainty: Chattel mortgage : Power of sale.* A stipulation, secured by chattel mortgage on a newspaper establishment, not to use the columns of the paper, or permit them to be used, to publish matter detrimental to the mortgagee, his reputation or business, which is unlimited in point of time, and designed to accompany the property into the hands of whomsoever may become purchasers, is held to be too vague, uncertain and indefinite to constitute the basis of a mortgage lien enforceable by power of sale; effect can be given to it only on a construction which would render it intolerable, and presumably not within the contemplation of the parties.

*Chattel mortgage: Printing material: New material: Commingling: Accession.* New printing material, purchased after the giving of a chattel mortgage on the establishment, to supply the wear, decay and destruction of old, and which has been so commingled with the old as not to be readily distinguished, would be included in the mortgage, and become a part of the mortgaged property by accession; but if so kept separate as to be readily distinguishable, it would not be thus included.

*Heard January 13 and 14. Decided January 26.*

Error to Manistee Circuit.

*Fowler & Harley* and *C. I. Walker,* for plaintiff in error.

*Ramsdell & Benedict* and *B. M. Cutcheon,* for defendant in error.

COOLEY, J.

This was an action of replevin brought by Fowler as mortgagee, for the presses and material of the Manistee *Times* printing office and paper, which had been sold by

the plaintiff to Hoffman and two others, and by the latter mortgaged for the purchase price. The mortgage contemplated possession of the property by the mortgagors until breach of condition, and, besides securing the notes given on the purchase, it contained a condition that the mortgagors should keep the property insured for Fowler's benefit, "and in all things perform and do according to the terms of an agreement" of even date, and it provided for a foreclosure of the mortgage by taking possession and making sale of the property if default should be made. Fowler claimed that payments had not been made as agreed; that the property had not been kept insured; and that in several particulars the terms of the agreement referred to in the mortgage had not been observed. On the trial this agreement was not produced, but evidence was given that it had accidentally been destroyed by fire, and secondary evidence was offered of the contents. This consisted in the main of what the plaintiff claimed was a copy; but this was made from another paper which was admitted not to be the original, and which was not shown to have been compared with the original. The court rejected-this paper, but allowed the plaintiff to go on and state the contents of the agreement from his recollection, which he testified was very clear and distinct, and which appears by his statement to have enabled him to state the contents *verbatim*. One of its conditions was that Fowler was to have the full and free use of one half column of the *Times* during the term of five years, for advertising purposes and the publication of reading matter; and another that the mortgagors would not use the columns of the paper or permit them to be used to publish matter detrimental to Fowler, his reputation or business. Fowler claimed that these provisions were violated by the publication of several articles disrespectful of himself, and by the refusal to publish a couple of items which he had sent for insertion. One of these items purported to be taken from a previous issue of the paper, and referred to Fowler as having "died politically;" and the

other, which was designed to follow it immediately in the paper, professed to consist of the recital of proceedings of a public meeting at which the publisher of the paper was pronounced unworthy the confidence or esteem of the people.   The court rejected the evidence of these publications and refusals to publish, as irrelevant.   Regarding insurance, the condition of the agreement was that the mortgagors should keep the property insured in some good and safe company "for the full amount due" Fowler, and for his benefit, until the whole amount of the purchase price was paid.   Evidence was given from which it might be claimed that the mortgagors did not keep the property insured, and that Fowler caused insurance to be effected at his own cost.   It being disputed whether any thing was overdue on the mortgage, the judge instructed the jury that the agreement to insure for the full amount *due*, must be understood only as referring to any amount that had become presently payable, and not to the whole amount secured by the mortgage and remaining unpaid.

The plaintiff requested the judge to submit to the jury thirty-one distinct questions of fact, some of which were not warranted by any evidence in the case, and some on points not contested.   The most of these the judge refused to submit, but he did submit those the answers to which could have any conclusive effect, and the jury returned, in response to them, in substance, that nothing was due on the mortgage when the property was taken upon it, though it was not yet satisfied in full; that the mortgagors failed to keep the mortgaged property insured for Fowler's benefit, and that the officer took upon the writ property to the amount of $1,024 not covered by it, and, as we understand them to mean, not included in the mortgage.

The plaintiff also presented thirty-eight different requests for instructions to the jury on the law.   Some of these were and some were not relevant to the case, and a distinct affirmative or negative answer to each must have left the jury in a state of utter doubt and uncertainty regard-

ing the rules that should govern their conclusions. The judge rejected the whole, but proceeded to give a connected charge covering the whole case, and responding to all the plaintiff's requests which were relevant or which were based on any evidence. Among other things the judge instructed the jury that if they should find no continuing breach in the condition of the mortgage at the time suit was brought, they should find for the defendant the whole value of the property replevied, which they did.

This statement will be sufficient to present the legal questions arising upon the record.

I. Whether the plaintiff was injured by the ruling of the court refusing to receive in evidence what was claimed to be a copy of the agreement referred to in the mortgage, is not made very clear by the record. A copy of what is said to be a copy of an original with which it was never compared, and from which it is not shown to have been taken, can have no claims to admission as secondary evidence. Where, however, a witness, from his own recollection of the contents of an original, can testify that it is a copy, it should be received. The weight of pertinent evidence on that point would be for the jury. The record is a little blind, and perhaps Mr. Fowler's evidence went to that extent. At any rate he appears to have been allowed to state fully to the jury the contents of the agreement; probably in the very language of the supposed copy.

II. The judge was clearly in error in holding that the stipulation for insurance, when speaking of the "amount due," meant not the whole sum secured, but only the amount that had become presently payable; in other words, the amount overdue. We cannot suppose such to have been the understanding of the parties. The word "due" is often used in business transactions as synonymous with "owing" or "remaining unpaid," and no reasonable doubt can exist that it was so used here. The need of insurance to protect the mortgagee would be at least as great before as after the payments fell due, and the mortgagee would not

be likely to leave the property uninsured when he could not protect himself by taking possession, and at the same time demand insurance when he had without it very efficient means of protection by proceeding to foreclose for condition broken.

III. Defendant claims that Fowler's insurance of the mortgaged property satisfied the stipulation in that regard, as it took from him the power to insure. But this is an error. Had Fowler insured when defendant was not in default, he might be estopped from complaining of a subsequent failure of defendant to do what he had thus rendered impossible; but when Fowler insured for his own protection after defendant has violated his own agreement in that regard, there can be no pretense for claiming that this enures for defendant's benefit. His agreement being broken, Fowler protects himself against the consequences as best he may. Insurance might be one method, and taking possession for breach of condition might be another.

IV. The judge was entirely correct in declining to put questions to the jury which had no evidence to warrant them, or which related to points not in dispute, or to facts which were in no way conclusive. If innumerable questions, relevant and irrelevant, important and immaterial, could thus of right be put to a jury, the practice would be the most ingenious ever yet devised for rendering jury trials abortive and loading down the record with errors, if by any chance a verdict was secured. For, while a jury might be entirely agreed upon the general merits of a case, they might wholly disagree regarding the various steps taken to reach the result, and the greater the number of questions the greater the probabilities of disagreement, and the more difficult for the judge to avoid errors. Good practice requires that the questions put should be few and simple; they should be pertinent and material to the issue, and they should be such as the jury would be compelled by the evidence to pass upon. And the judge cannot be required to put to the jury questions which might be answered either

way without influencing the result. In this case we think no questions were improperly rejected.

V. The judge also acted wisely in refusing all the plaintiff's requests for instructions, and in giving a connected and intelligent charge covering the whole case. This is the safe and proper course to be taken in every instance; for a multitude of instructions given or refused in the language of counsel must generally fail to give the jury a clear understanding of the law which they are to accept as their guide. No one can complain of the refusal of his instructions if the charge as given covers the ground and lays down the law as was requested, or lays it down correctly.

VI. We think the court was in error in instructing the jury that if there was no continuing breach of the mortgage at the time suit was commenced, defendant was entitled to recover the full value of the property taken on the writ. This instruction left wholly out of view whatever was to become due thereafter. The statute, *Comp. L.*, §. *6754*, requires a special finding in such a case, and that judgment shall be rendered as shall be right between the parties. When defendant, succeeding in the suit, demands a return of the property, he is entitled to it regardless of what may be unpaid on the mortgage; but in that case the lien remains, and the property may be taken to enforce it should a breach occur. But when, instead of demanding a return, the defendant asks judgment for the value, he must be content to take such judgment as would be equitable under the circumstances. As the lien would be gone, an equitable judgment would be the value less the amount still to come due, or, if that were not on interest, the amount with the proper discount. In other words, the mortgagor should have judgment for the real value of his interest.—*Russell v. Butterfield, 21 Wend., 300.*

VII. The judge was also correct in holding that Fowler had no right to require that the publisher of the *Times* should admit to its columns an article reflecting upon himself. Any stipulation by the conductor of a paper to give

space to another must be understood to be subject to the implied condition that the space should not be employed to subject the conductor himself to ridicule and disgrace; in other words, that the use should be such as, considering the position of the party agreeing to allow it, could be fairly regarded as embraced by their understanding. It is immaterial that Fowler had previously been badly treated by the paper; that might, perhaps, give him a right of action, but it could not enlarge the scope or effect of this agreement.

VIII. Perhaps the most important question in the case relates to that clause of the agreement by which Hoffman and his associates undertook not to use the columns of the paper, or permit them to be used, to publish matter detrimental to Fowler, his reputation or business. To understand the full significance of this question, it must be borne in mind that the performance of the agreement was secured by a mortgage on the newspaper establishment, and that a foreclosure was attempted by a seizure and sale of the mortgaged property for a breach of this among other conditions. The alleged breach consisted in the publication of articles not complimentary to Fowler, but which Hoffman insists were published concerning him in his character as a candidate for a public office, and justifiable because of that candidature. The questions raised on the argument by Hoffman's counsel have therefore been, whether such a stipulation could preclude the manager of a paper discussing freely therein the aspirations and fitness of a candidate for public office, and whether, if it could, it would be competent to secure performance by a chattel mortgage. It is said with great reason that if this can be done some extraordinary consequences may follow. The agreement is indefinite in time, and the mortgage lien will follow the property into the hands of purchasers. It will not be discharged by the payment of the mortgage debt, for the two things are wholly distinct. The mortgage will consequently remain a perpetual security that the proprietors of the establish-

ment, whoever they may be, shall permit nothing to appear in their columns injurious to the business or reputation of Mr. Fowler. Moreover, if a breach shall occur, whether of purpose or by inadvertence, the mortgagee will have in hand the means of inflicting swift punishment, and may levy distress to the destruction of the business, without any judicial proceedings, and before in any manner it has been determined whether the damages are more than nominal. And the question is put, how the damages are to be assessed in such a case, when the mortgagee has taken the law into his own hands, and seized property for the punishment of defamation, instead of bringing suit. Is he to be his own judge as well as officer; first assessing his own damages, and then seizing and selling the property to satisfy them?

Some of the difficulties suggested might be serious if we felt ourselves under the necessity of considering them; but we are not disposed to attempt their solution in advance of any necessity. We do not think that necessity is presented by this record. The agreement itself on which the plaintiff relies does not, in our opinion, possess such elements of certainty and precision as to enable us to give it effect. And having reached this conclusion, we shall not trouble ourselves to consider what its force or validity might have been if its construction were what is claimed for it by either party.

The plaintiff has treated this as a stipulation to protect himself against libels in the paper he was selling. But it is nothing of the kind. That may have been its intent, but the manifest scope and the apparent purpose are very much broader. What is detrimental to a man, his reputation or business? Certainly not libels alone. The most innocent publication may be equally so. The truth may sometimes be more detrimental to a man than a falsehood, and this, too, when its publication would be so entirely proper as to be wholly justifiable. The appearance of the advertisement of a rival in trade may be detrimental to one's business; the truthful information that a lawyer has

been defeated in an important litigation entered into on his advice, may detract from his reputation; the just and proper praise of a rival candidate for a public office, may be detrimental, by diminishing one's chances of success; and even the publication of an official canvass may sometimes be far from complimentary to a candidate, and thus more or less injurious. We do not undertake to decide that any one of these things were or were not within the intent of the parties in making this agreement, but only to point out that the most innocent publication may be as much within its apparent construction as the most malicious, and that, being unlimited in point of time, and accompanying the property into the hands of whomsoever may become purchasers,— those who might be strangers to the mortgagee, as well as any others,—if effect can be given to it at all, it would only be on a construction which would render it intolerable, and under which the publisher could only protect himself against inadvertent violations, by putting some one who well understood the mortgagee in all his pecuniary, business and social relations in position of censor over the columns of his paper, lest something should creep in that in some unexpected manner might be injurious. We are not disposed to assume that such a result was within the contemplation of the parties, but if their agreement falls short of this, it is, in our opinion, too vague, uncertain and indefinite, to constitute the basis of a mortgage lien enforceable by power of sale.

IX. The question whether Fowler was justified in taking by virtue of his mortgage any new material which had been brought into the establishment since the mortgage was given, is not fairly presented by the record. But as that question is in the case, and there has been an attempt to present it, and, moreover, as it is likely to arise on a new trial, we deem it proper to say, that if the new material was purchased to supply the wear, decay and destruction of old, and was so commingled with the old as not to be readily distinguished, it would become a part of the mortgaged property by accession; otherwise not.— *Willard v. Rice,* 11

*Met., 493 ; Loomis v. Green,  7  Greenl., 393 ; Barron v. Cobleigh, 11 N. H., 559 ; Weatherbee v. Green, 22 Mich., 317, and cases cited.*

The judgment must be reversed, with costs, and a new trial ordered.

The other Justices concurred.