## DANE & ELLS *vs.* MALLORY.

In an action to recover the possession of personal property, title in the plaintiff cannot be established by parol evidence that he purchased the same at a sheriff's sale, without some proof of the *judgment* under which the sale took place.

Where the holder of a chattel mortgage, after the same has become forfeited by non-payment, places what purports to be a copy of the mortgage, in the hands of another, as evidence of his authority to take the property, and the latter, by his agent, takes possession of the mortgaged property, and sells it in pursuance of the terms of the mortgage, such sale will not be rendered invalid by an unimportant variance between the copy and the original, where the possession of the property is not fraudulently obtained by the presentation of the instrument as a true copy, nor such possession yielded on that ground.

The object of the statute allowing a copy of a chattel mortgage to be made, and providing that it shall be evidence of certain facts, does not require an *exact* copy. If the copy is substantially correct the purpose of the act is attained.

Upon the failure of the mortgagor in a chattel mortgage to perform the condition of the mortgage, the title at law becomes absolute in the mortgagee and his assigns, and he or they may sell the mortgaged property at private sale; especially as against strangers.

The filing of the statement in the town clerk's office, by way of renewal of a chattel mortgage, as required by the act of 1833, is not an extension of credit; and will not prevent the mortagee from insisting on a forfeiture.

THIS was an appeal by the plaintiffs from a judgment rendered at a special term, upon the verdict of a jury, and upon

Dane *v.* Mallory.

questions of law and fact reserved by the judge. The action was brought to recover the possession of a canal boat. The complaint alleged that the plaintiffs being owners of the boat Wakondah of New-York, and her tackle and furniture, sold it on the 9th of May, 1850, to Lorenzo D. Foster and Augustus Brown, and to secure the payment of the purchase money, took a mortgage thereon from Foster and Brown. On the 14th of September, 1850, two payments being due and unpaid on the mortgage, and the plaintiffs feeling insecure, they took possession of the boat and other property, with intent to sell it according to the mortgage; but the defendant on or about the same date, wrongfully took the boat and other property from the possession of the plaintiffs. On the 2d of October, 1850, and at other times, the plaintiffs demanded the boat of the defendant, and he refused to deliver it up. Wherefore, the plaintiffs demanded that the property be returned to them, with damages for its detention, to the amount of $100. The answer denied the allegations of the complaint, in detail, and claimed that the defendant was the lawful owner of the boat; that in the year 1846, Harry and Ira Gardner, of Chemung county, were the owners of the boat and mortgaged it to Alvah Nash, who afterwards assigned the mortgage to Green and C. M. Bennett of the same county, who, on the 26th of June, 1850, payments on the mortgage being due and unpaid, took the boat at the city of Oswego, and on the 2d day of July, 1850, sold it at public auction to Augustus Brown, who executed a chattel mortgage upon the boat for the purchase money, on which last mentioned mortgage, payments being due and unpaid thereon, the boat was taken on the 7th of September, 1850, and sold to the defendant. The answer further alleged that on the 5th of October, the plaintiffs took and converted the property to their own use, to the defendant's damage of $800. The reply denied in detail the allegations of the answer, and alleged that if any such sales were ever made as averred in the answer, they were fraudulent, and that the defendant had notice of the fraud.

The cause was tried at the Oswego circuit in February, before the Hon. W. F. ALLEN, justice. The plaintiff proved by

James Ells, jun. that at a sheriff's sale of the property of Ira Gardner, in the fall of 1849, he purchased the boat for the Troy and Oswego Line, and Francis B. Dane, one of the plaintiffs in this suit. And that in the same fall the Troy and Oswego Line sold their interest in the boat to the plaintiff Daniel T. Ells. The other facts in the case are sufficiently stated in the following opinion, delivered by Justice ALLEN, at special term.

W. F. ALLEN, J. The evidence in this cause shows that in 1846 one Nash was the owner of the boat in question, and sold it to H. and I. Gardner, taking from them a mortgage upon the boat to secure the payment of the purchase money. That in 1849 there was a default in the payment of the sum secured according to the terms of the mortgage. That in the spring of 1850 the plaintiffs were in possession of the boat claiming to be the owners, and sold it to Brown and Foster, taking from them a mortgage to secure the purchase money. There is no proof of the source of the plaintiffs' title, save the evidence of their agent, that they purchased the boat at a sheriff's sale of the property of the Gardners. That in June, 1850, or thereabouts, the assignees of the Nash mortgage took possession of the boat; and after having first given notice that it would be sold at public auction, and suffering the time to pass without such sale, sold it to Brown at private sale, taking back a mortgage for the purchase money; upon which last mortgage the boat was sold to the defendant in this action, on the 7th of September, 1850. That the plaintiffs, in September, 1850, there having been a default in the payment of the amount due upon their mortgage from Brown and Foster, took the boat into their possession, claiming the right to do so, in virtue of their mortgage. The defendant repossessed himself of the boat by taking her from the place where she had been left by the plaintiffs, and this action is brought to recover the possession of the boat. Several questions were raised upon the trial which, by consent of the parties, were reserved for further consideration.

Dane *v.* Mallory.

1. No question is made as to the validity of the Nash mortgage, in its inception.

2. The plaintiffs being in the possession of the property in the spring of 1850, in the absence of other evidence would have been presumed to be the owners and entitled to all rights appertaining to that character. But the evidence shows that the assignees of Nash, the mortgagee, had certain rights to and a claim upon the boat. It follows that the title of the plaintiffs is subject to the right and claims of such assignees under their mortgage; in other words, that the rights of the plaintiffs are no other or greater than those of the Gardners would have been had they continued to be the owners. The plaintiffs, under the evidence, must be held to claim under the Gardners, and to have acquired their title. This is the presumption the most favorable to them.

3. In the fall of 1849, default had been made in the payment of the amount secured to be paid by the mortgage to Nash, and nothing has been paid thereon since that time; so that in the spring of 1850 the plaintiffs had the naked possession of the boat without a right to retain the possession a single instant as against the persons claiming under the Nash mortgage. They had not the possession with the right of possession for a definite period of time, which has been held to be such an interest in personal property as is recognized by law, and is liable to levy and sale upon execution against the mortgagor or those claiming under him. (*Bailey* v. *Burton*, 8 *Wend.* 339. *Randall* v. *Cook*, 17 *Id.* 53. *Mattison* v. *Baucus*, 1 *Comst.* 295.) The chancellor, in *Hanford* v. *Artcher*, (4 *Hill*, 271,) appears to be of the opinion that the interest of a mortgagor of personal property may be lawfully seized and sold on a fi. fa. against him, subject to the claim of the mortgagee at any time before the latter has exercised his right of reducing the property to possession; but the point was not decided by the court, and the current of authority is the other way. *Marsh* v. *Lawrence*, (4 *Cowen*, 461,) is directly in point, and decides that an equity of redemption in goods cannot be sold on execution. All the cases agree that after the condition

Dane *v.* Mallory.

is forfeited, the mortgagee has an absolute interest in the thing mortgaged. It can be levied upon and sold as his property. If it is taken from the possession of the mortgagor, the mortgagee can maintain trespass or replevin in the cepit, his title drawing with it and giving him the constructive possession. The mortgagor cannot, even upon tender of the amount due, entitle himself to the possession of the property, or maintain trover for it. His only right is an equity of redemption, to be enforced in equity, and as an equity, and not as a legal right. (*Brown* v. *Bement*, 8 *John.* 96. *Ackley* v. *Finch*, 7 *Cowen*, 290. *Otis* v. *Wood*, 3 *Wend.* 498. *Langdon* v. *Buel*, 9 *Id.* 80. *Furguson* v. *Lee, Id.* 258. *Patchin* v. *Pierce*, 12 *Id.* 61. *Fuller* v. *Acker*, 1 *Hill* 473.) And all the interest of Nash, the mortgagee in this case, vested in his assignees ; and this, whether the assignment was before or after forfeiture. (*Langdon* v. *Buel, supra.*) So that in 1850, when the plaintiffs sold to Brown and Foster, and also when possession was taken under the Nash mortgage, the assignees of Nash were the absolute owners of the property, and entitled to the immediate possession, and the plaintiffs only had an equity of redemption in the property.

4. The assignees of Nash, as owners of the property, took possession of it and ousted the vendees of the plaintiffs, and of this the plaintiffs had notice. It must be conceded that this terminated the possession of Brown and Foster under the plaintiffs, and of course all right and claim at law of the plaintiffs under their mortgage. The exercise by the assignees of Nash of their right to take possession of the property, operated as well upon the mortgage lien of the plaintiffs as the actual possession of Brown and Foster, and put an end to the legal right of either to maintain an action for an interference with the property. This being so, the plaintiffs cannot in this action inquire into the legality or regularity of the proceedings under the Nash mortgage. The only object of a public sale under the mortgage is to foreclose the equity of redemption of the mortgagors, and those claiming under them. (*Per Nelson, J.* 12 *Wend.* 63, *and cases cited by him.*) The foreclosure of this equity is not necessary to perfect the legal title in the mortgagee or his

assignees. The defendant was in possession under the assignees of the mortgage, and of course had the same right to retain and defend that possession, as such assignees would have had. The plaintiffs were strangers. Upon a bill filed to redeem by the plaintiffs, questions may and doubtless will arise upon the proceedings under the Nash mortgage, but they cannot be settled here, where both parties rely upon their legal rights. But it is insisted that Brown, one of the plaintiffs' vendees, having become the purchaser from the holders of the Nash mortgage, after they had reduced the mortgaged property to possession, must be held to have merely bought in an outstanding claim upon the property, and should be charged as trustee for the benefit of the plaintiffs. I am not now prepared so to hold, and yet it may be so held in an action brought, presenting that question, as in a suit to redeem. But if this were the case, I do not see how it can aid the plaintiffs in this action, for in that case Brown would at law have the same right to retain the possession that his vendees, the Bennetts, would have had, and the fact that by reason of the peculiar relations existing between the parties, the plaintiffs would have an additional equity against him, cannot aid them here. The plaintiffs' right is, I think, clearly an equitable right, and to be treated and enforced as such, and that they had not at the time of the commencement of this action any right to the possession of the boat.

Judgment must be given for the defendant.

Judgment being accordingly given for the defendant, the plaintiffs appealed to the general term.

*Talcott & Churchill*, for the plaintiffs.

*Robinson & Hathaway*, for the defendant.

*By the Court*, GRIDLEY, J. The only question involved in this cause respects the title of the defendant to the boat, under the Nash mortgage. For if that mortgage was a valid instrument, then the title of the plaintiffs, being derived under a sheriff's sale of the boat, against one of the persons who exe-

cuted the mortgage to Nash, was subordinate and subject to the superior title or lien created by it. The sale, under the execution against Gardner, being proved by parol, without any evidence of a judgment, could not convey any title to the purchaser. (*Yates* v. *St. John*, 12 *Wend.* 74.)

The whole question therefore depends on the right of the defendant, as derived under the Nash mortgage. The original mortgage was dated on the 23d day of July, 1846, and was executed by Harry Gardner and Ira Gardner, to Alvah Nash, on the boat in question in this suit, and was filed the same day, in the proper office. Certificates were indorsed on the mortgage, at the proper time, in the four successive years thereafter, with a statement of the amount remaining due each year. No objection was raised, to the regularity of these proceedings.

Bennett, one of the assignees of the mortgage in question, in the month of June, 1850, placed what purported to be a copy of the mortgage in the hands of Mr. Hathaway, as evidence of his authority to take the boat. He, by his agent, did take the boat, and advertised it to be sold on the second of July. The boat, however, was not sold at that time; but the sale was adjourned to a subsequent day; before which, Mr. Hathaway had disposed of the boat at private sale to Augustus Brown, and taken back a mortgage for the purchase money, and it was on a sale upon that mortgage that the defendant purchased the boat.

(1.) The copy of the mortgage delivered by Bennett to Hathaway as authority for seizing the boat was not an accurate copy of the original mortgage, and the point is made that a seizure and sale under such defective copy did not convey a good title to the purchaser. It is true that the copy is not precisely accurate. But the *consideration* is the same; the subject matter is the same, viz. the boat Wakondah; the condition is the same; and the mode of foreclosure prescribed in the instrument is the same in both securities. There is only a change in the language of the mortgage attributable to the use of a different printed form for the copy from that used for the original, without affecting any substantial provision of the in-

Dane *v.* Mallory.

strument or any right secured by it. To the objections growing out of the defect in the copy there are two sufficient answers : First. The *authority* for making the seizure, was the original mortgage and not the copy. The only use of the copy which Mr. Hathaway could make would be to satisfy those who had the possession of the boat, of his superior right to it. The copy of the mortgage did not clothe its possessor with any official authority to take the boat; nor could it in any sense be regarded as *process*, conferring a right on the possessor to seize the boat. And therefore, whether the copy which Hathaway held was a true copy or not, was immaterial, unless possession of the boat was fraudulently obtained by the presentation of the instrument as a true copy, and the boat was yielded on that precise ground. But it was not so yielded. For aught that appears, Mr. Rockwood took possession of it where it lay, vacant and unoccupied. A *second* answer is that the *object* of the act authorizing a copy to be made and providing that it should be evidence of certain facts, does not require an *exact* copy. If the copy is substantially correct, the object of the act is attained.

(2.) The next question is, whether there was any irregularity in the sale to Brown, by Hathaway, after the adjournment of the sale by Rockwood ; of which the plaintiff can complain. In the fall of 1848 one of the mortgagors removed the boat to Troy, so that the mortgagee had no opportunity to seize it as forfeited. The first default occurred the same fall, and from that time the title at law became absolute in the mortgagee and his assigns. (*Brown* v. *Bement*, 8 *John.* 96. *Otis* v. *Ward*, 3 *Wend.* 498. *Langdon* v. *Buel*, 9 *Id.* 80. *Patchin* v. *Pierce*, 12 *Id.* 61.) And in a subsequent case it was expressly held that the provision in the mortgage for selling the property at auction and restoring the surplus moneys to the mortgagor, made no difference in this respect. And it was determined in *Fuller* v. *Acker*, (1 *Hill*, 473,) that the filing of the statement by way of renewal, required by the act of 1833, is not an extension of credit, and does not prevent the mortgagee from insisting on the forfeiture. It follows that Hathaway had a right at law to sell the boat, at private sale, just as he might sell any other property, to which

he had an absolute and unqualified title ; especially as against the plaintiffs, who are mere strangers, on the evidence in this case.

In equity, if the mortgagors, the Gardners, or those who could show that they stood in their place, by purchase of the property, had sought to *redeem,* they might have done so. But no such right has been exercised, and no person, from whom the plaintiffs derive their claim, has shown any legal transmission of the title of the Gardners to him.

[ONEIDA GENERAL TERM, January 5, 1852. *Gridley, W. F. Allen, Hubbard* and *Pratt,* Justices.]