## LEACH v. KIMBALL.

A mortgage of personal property contained no clause entitling the mortgagor to retain possession. The mortgagee took possession of the property, and, the condition being broken, sold it, but not in the manner prescribed by statute. — Held, that the mortgagee had the legal title, and was rightfully in possession; that the mortgagor, having neither the property nor any right of possession, but a mere right to redeem, could not maintain trespass. The sale was not by virtue of any authority in law, the abuse of which would make the mortgagee a trespasser ab initio; and the title of the mortgage was not forfeited by a sale, though wrongful, as that of a mere bailee might be. The remedy of a mortgagor in such a case must be an action on the case.

The statute forbidding a second mortgage without a reference in it to the first, does not make the second mortgage void; because the statute is designed to secure the rights of the second mortgagee, and the parties are not in pari delicto.

An assignee of the mortgagor has no greater rights than his assignor.

TRESPASS, for taking, &c., one yoke of oxen, three cows, and one pair of two years old steers. Plea, the general issue.

The plaintiff's evidence tended to prove that the oxen, cows and steers were taken and disposed of by the defendant.

To show his title to the oxen, the plaintiff introduced a mortgage of the same, made when they were calves, by Nathaniel H. Leach to Samuel Emerson, dated October 21, 1847, and an assignment to himself in December, 1848, and another mortgage of the same from the said Nath. H. Leach to E. S. Flanders, dated December 15, 1848, subject to the first mortgage, and an assignment of it to himself, April, 1849.

To show his title to the cows and steers, the plaintiff introduced a mortgage of them from John H. Leach to himself, dated February 2, 1854. There was no reference in it to any previous mortgag..

The defendant, to show title to the oxen in himself, introduced a mortgage of the same from Nath. H. Leach, and Calvin B. Leach, the plaintiff, to E. S. Flanders, dated March 12, 1851, and an assignment to himself, February 4, 1854.

To show title to the cows and steers in himself, he introduced a mortgage of the same from John H. Leach to John V. Barron, dated December 12, 1853, and an assignment of the same to himself, July 7, 1854.

All the mortgages were duly executed and recorded in the order of their dates.

The plaintiff's evidence tended to prove that the oxen were taken by the defendant and said Nath. H. Leach, and sold at private sale in October, 1854, for more than enough to pay the defendant's mortgage on them, and the money paid to the defendant.

The cow and steers were sold by the witness, at the request of the defendant and said Nath. H. Leach, at auction, in November, 1854, by virtue of the defendant's mortgage of them, but they did not sell for enough to pay it.

There was evidence that notices of the sale on the mortgage were made out, but none that they were affixed, according to the requisition of the statute.

Upon this evidence the plaintiff contended that the defendant

was a trespasser, and liable to him in this action ; but the court ruled otherwise, and directed a verdict for the defendant; to which the plaintiff excepted, and moves for a new trial.

*S. Emerson*, and *L. D. Sawyer*, for the plaintiff, contended,

1. The oxen were the property of the plaintiff and in his possession, and were taken out of his possession by the defendant. Therefore the defendant cannot, under the general issue, justify the taking, but must set forth his right by plea, and show that he pursued the course with them directed by statute. *Barrett* v. *White*, 3 N. H. 210 ; 1 Ch. Pl. 493, 497 ; *Brown* v. *Smith*, 1 N. H. 36 ; *Gordon* v. *Edson*, 2 N. H. 152 ; *Swett* v. *Goodall*, 19 N. H. 562.

2. N. H. Leach had no property in the oxen, and his presence and acquiescence cannot justify Kimball in a wrongful taking or conversion.

3. Where an officer or individual departs from a course pointed out by statute, he should be considered to do so from the beginning, and the defendant, by selling the oxen at private sale, should be regarded as taking them, not by virtue of the mortgage, but as his own absolute property. 2 N. H. 152.

4. The cows and two year olds were in possession of the plaintiff, claiming them as his property, and the defendant could not take them, unless he can justify by plea ; and having plead he must prove his compliance with the statute, and failing to do so is a trespasser *ab initio*. *Brackett* v. *Whidden*, 2 N. H. 152 ; 3 N. H. 20.

*H. A. Bellows*, *E. A. Hibbard*, and *J. Eastman*, for the defendants.

BELL, J. By a mortgage of personal property the whole legal title — the general property — passes conditionally to the mortgagee. Story on Bail. 287 ; *Bank* v. *Jones*, 4 Comst. 497 ; *Stewart* v. *Hanson*, 5 Red. 506.

The mortgager has a right to redeem the property by pay-

ment, or the performance of the condition, but he has no special property in the goods mortgaged, and has no right to interfere with or control the property, until the condition is performed.

A pledge, though, like a mortgage a security for a debt, is a mere bailment — a delivery of articles, to be kept till the debt is paid, and it passes to the pledgee a special property only, while the general property remains in the pledger. 4 Kent's Com. 138 ; *Paige*, J., 4 Comst. 507 ; Story Bail. 287.

There is, consequently, a marked difference in the legal principles applicable to these two kinds of securities. Possession is essential to a pledge, but not to a mortgage. The mortgage is valid, if duly recorded, though the mortgager keeps possession of the property, either by agreement or by the permission of the mortgagee. *Hoit* v. *Remick*, 11 N. H. 285 ; *Smith* v. *Moore*, 11 N. H. 55 ; *Ash* v. *Savage*, 5 N. H. 545.

If there is no agreement that the mortgager shall retain possession, the mortgagee, by virtue of the general property, has a right to the possession, and may, at his pleasure, at any time, either before or after condition broken, take the property into his own hands. The mortgager has no right to retain the property against his will. *Libby* v. *Cushman*, 16 Shep. 429 ; *Stewart* v. *Hanson*, 5 Red. 508 ; *Brackett* v. *Bullard*, 12 Met. 308.

Where the parties have stipulated in the mortgage that the mortgagee shall keep possession till condition broken, or for a certain time, or till the occurrence of some future contingency, the mortgager will have a special property, and the right of the mortgagee will be thereby suspended till the right of possession of the mortgagee has ceased. *Russell* v. *Butterfield*, 21 Wend. 300 ; *Welch* v. *Whittemore*, 12 Shep. 499 ; *Rodman* v. *Hendricks*, 1 Sandf. 32 ; *Skiff* v. *Solace*, 8 Wash. 279.

In the present case, C. B. Leach, the plaintiff, is to be regarded as the mortgager. Though he was but the assignee of the first mortgage made of the property, yet as such he held the legal title to the property, subject to the conditional right of the first mortgager, N. H. Leach, to redeem. From him the legal title passed by the mortgage to E. S. Flanders, and by Flanders'

assignment it passed to Kimball, the defendant, who claims the property under it, and has taken it into his own possession.

Though the right of the mortgager to redeem is not at law negotiable or assignable, yet an assignee takes an equitable interest in the property, which courts of law as well as equity will protect ; *Abbott* v. *Goodwin*, 7 Shep. 407 ; *Leiter* v. *Bowman*, 6 Barb. 133 ; *Dame* v. *Mallory*, 16 Barb. 46 ; yet any assignment by the mortgagee conveys the legal title to the property, subject to the condition. In both these cases the Revised Statutes recognize the assignee as having the same rights substantially as the mortgager and mortgagee. Chap. 131, sec. 17.

From the principles stated it follows, that, as the original mortgager, the plaintiff could not maintain trespass against the original mortgagee for the act of taking and carrying away this property, so he cannot maintain the action against the defendant, the assignee ; for there is no pretence that there was here any agreement that the property should be kept by the mortgager. Indeed, we do not understand that it is contended that for that act alone the action can be supported.

But it is contended that the power of the mortgager thus to take the property is an authority given by the law, and that the sale of the property at private sale, and not as the statute prescribes, at public auction, is an abuse of such authority, which makes the defendant a trespasser *ab initio*. Or, that such an unauthorized sale, like a sale of goods by a bailee, who has but a special property, has the effect to put an end to the title conveyed by the mortgage, as it would to that of a bailee, and authorizes the original owner to bring an action of trespass. Neither of these views is well founded.

It is true, that where the law gives to one man an authority, under special circumstances, to do that in respect to the property of another which would be a trespass if it was not so authorized, and that authority is abused, the party thereby becomes a trespasser *ab initio*. *Barritt* v. *White*, 3 N. H. 210. But that is not this case. The legal property here was the property of the defendant and not of the plaintiff, and the act of taking it was

clearly not a trespass. The defendant acted by no license or authority in law, but by virtue of his right of property. His authority was derived from the mortgage ; that is, from the mortgager himself, and no one becomes a trespasser *ab initio* by reason of any excess or abuse of an authority in fact. *Wendell v. Johnson*, 8 N. H. 220.

It is also true, that if a bailee, who has possession and a special property only, makes an absolute and unqualified sale of the property, he thereby forfeits all his interest in it, and he and the purchaser may be treated as a trespasser, because such a sale tends to impair the right of the general owner. *Sanborn v. Colman*, 6 N. H. 14 ; *Sargent v. Gile*, 8 N. H. 325 ; *Bailey v. Colby, ante*, 29.

Here it is the general owner who sells, and his sale has not in the eye of the law any effect to impair the property of any one ; 4 Kent Com. 125 ; because the mortgager has no property, but a right of redemption only, and the estate of the purchaser still remains defeasible by a redemption, as it was in the hands of the mortgagee. 2 Blac. Com. 156 ; 4 Kent Com. 125.

The case of the mortgagee differs from that of the pledgee in the different nature of their interest, and no case is recollected where the general owner of property forfeits his right by any act injuriously affecting those who have special interests subordinate to his.

Both these positions of the plaintiff rest on an erroneous impression as to the effect of the Revised Statutes upon the rights of the parties to a mortgage.

All the cases agree that after the condition is forfeited, the mortgagee has at law an absolute interest in the thing mortgaged. He may dispose of it as he pleases, and it may be levied upon and sold as his property. *Dame v. Mallory*, 16 Barb. 46 ; *Langdon v. Buel*, 9 Wend. 81 ; *Wendell v. N. H. Bank*, 9 N. H. 420, and cases there cited. The mortgagee cannot, even upon tender of the money due, entitle himself to the possession of the property, or maintain an action for it ; 16 Barb. 46 ; *Patchin v. Pierce*, 12 Wend. 61 ; though an accept-

ance of the money tendered would be a waiver of the forfeiture, and would revest the property in the mortgager; 12 Wend. 61; *Leighton* v. *Shapley*, 8 N. H. 359; *Parks* v. *Hall*, 2 Pick. 206; *Barry* v. *Bennett*, 7 Met. 354; as an extension of the time of payment, even by parol, would prevent a forfeiture till the expiration of the extended time. *Flanders* v. *Barstow*, 6 Shep. 357.

By the forfeiture the mortgager's rights at law were all gone, and his only right was an equity of redemption, to be enforced in equity, and as an equity and not as a legal right. *Cutts* v. *York M. Co.*, 6 Shep. 201; 16 Barb. 46; *Brown* v. *Bennett*, 16 Johns. 96; *Ackley* v. *Finch*, 7 Cow. 290; *Otis* v. *Wood*, 3 Wend. 498; 9 Wend. 80, and 258; 12 Wend. 61; *Fuller* v. *Acker*, 1 Hill. 473; 9 N. H. 420; *Hunt* v. *Ten Eyck*, 2 Johns. Ch. 62.

The Revised Statutes made a change in respect to these relations of mortgager and mortgagee, of some moment. They gave to the mortgager at law a right to redeem the property mortgaged, even after a forfeiture, until a foreclosure was effected by a sale at auction, upon a prescribed notice, and it gave to the mortgagee the power to bar all the right, even in equity, of the mortgager to redeem, by the prescribed notice and sale at auction. Rev. Stat., ch. 132, sec. 16.

The only object of this public sale was to foreclose the old equity of redemption and the new statutory right of redemption of the mortgager, and those claiming under him. But this foreclosure is not necessary to give to the mortgagee, or his assignee, all the rights of an absolute owner in every other respect, except that the property remains liable to be redeemed. 16 Barb. 50; 12 Wend. 63.

The statute converts the equitable right of the mortgager to redeem into a legal right, and of course gives to the mortgager a remedy at law, instead of in equity, for an infringement of his rights; but such remedy must be sought agreeably to the ordinary rules affecting other actions at law.

The right of the mortgager to redeem, after a forfeiture under

the statute, is precisely the same as his right to redeem before forfeiture by law; and no objection occurs to us to prevent the mortgager from maintaining an action on the case against the mortgagee, in case he should sell, dispose of, injure or destroy the mortgaged property in such a manner as to destroy or impair his right to redeem; and in that form of action he might be entitled to recover damages justly proportionate to the injuries he has sustained. *White* v. *Phelps*, 21 Wend. 300; 12 N. H. 385.

But though considerations of public policy might favor a pretty severe rule in such cases, because of the unavoidable tendency of such conduct to defraud the mortgager, yet the rules which govern the action of trespass *ab initio* are not calculated to do justice to the rights, either legal or equitable, of the parties. The mortgager should be compensated, if wrong is done to him, but to subject the whole debt to forfeiture might be much more than justice requires.

Two questions are presented by that part of the case which relates to the mortgage of the cows and steers. 1. The nature of Leach's interest as second mortgagee, and, 2, the effect of the omission to refer to the first mortgage in the second, under which he claims his interest.

The second mortgagee is assignee, subject to a condition of all the rights of the mortgager. In law, independent of our statute, he is assignee of a condition — of a mere right to redeem, which is not an assignable interest; and though, as has been observed, it transfers an equitable right, which courts to a certain extent recognize and protect, still it transfers no legal title which could be the foundation of an action of trespass. In equity, and in the proceedings proper to courts of equity, the assignee is deemed the holder of an equitable right, which will be equally regarded as those of the mortgager himself. Under our statute, the assignee may be considered as having precisely the rights of the mortgager; at least, as to all the rights given or regulated by the statute.

As the rights of the assignee can be in no event greater than

those of the mortgager — and we have held that he cannot maintain trespass in the case of the oxen — it is clear that as assignee he labors under the same disability as to this branch of his case.

2. The statute provides — Rev. Stat., ch. 132, secs. 9, 10 — that " no mortgager shall execute any second or subsequent mortgage of personal property, while the same is subject to a previously existing mortgage, given by such mortgager, unless the fact of the existence of such previous mortgage is set forth· in the subsequent mortgage," under a severe penalty. It is contended that under this provision the second mortgage, as being forbidden by law, is void.

It is settled that when a statute inflicts a penalty for doing an act, that act is by implication prohibited and illegal, and when an illegal contract is made between parties *who are in pari delicto*, the contract is void, and neither party can maintain any action which requires for its support the aid of such illegal contract. *Roby* v. *West*, 4 N. H. 285 ; *Pray* v. *Burbank*, 10 N. H. 378 ; *Williams* v. *Tappan*, 3 Foster 390 ; *Bosanquet* v. *Dashwood*, Cas. tem. Talbot 38.

But we are of opinion that this provision was designed for the protection and security of the second mortgagee, and that the whole object of the statute would be defeated by holding the mortgage void. The parties do not stand *in pari delicto*. The contract might well be avoided by the plaintiff, if he was a sufferer, but it cannot be avoided by the defendant, who would thus take advantage of his own wrong, or that of his grantor. 4 N. H. 285, and cases there cited ; *White* v. *Hunter*, 3 Foster 132 ; *Taylor* v. *Weld*, 4 Mass. 116 ; Story on Con., secs. 158, 188 ; Powell on Con. 201, 204 ; 1 Stor. Eq. Jur., secs. 298, 305.

*Judgment on the verdict.*