By the Court.*—Robertson, J.
The plaintiff claims the ‘property in controversy, by virtue of a sale thereof under an in-strument of hypothecation of it executed by the original owners to a Mr. Thurber, held by the plaintiff as assignee thereof. At such sale an agent of the plaintiff, (Miller), bought such property and took possession of it for him, subsequently transferred it to him, and informed him he had done so. The original owner commenced an action and proceedings of claim, and delivery for ’it after such sale, against Miller (the agent), out of whose manual ‘possession the defendants as Sheriff and Deputy Sheriff took it, by virtue of the duly verified written claim, in such action, which was placed in their hands for service. Before the service. of the summons, in such action, and the seizure of the property under such claim, the officer who served them was informed, *69 that Miller claimed the property only as the plaintiff’s agent. It was contended on the trial that, such information prevented .the defendants from justifying .under the claim in such action, but how, was not clearly stated. It was now, however, urged that the action was not commenced until the actual service of the papers on Miller the agent, and that an instruction by the Court to the jury that a bona fide attempt to serve the papers was equivalent to a service for the purpose of commencing the action, was erroneous.
Two things would be necessary to make such charge erroneous. First, That the priority of the service of the papers to the giving of information of the plaintiff’s claim should be material. Secondly, That an actual possession by one wrongdoer for the benefit of another, required a suit for the property to be brought against the latter in order to justify a seizure of it in the hands of the former under a claim.
There was no evidence that the property ever left the actual . possession of Miller, until the service of the papers on him. The mere private recognition by him óf a right in the present plaintiff, even if made after the sale but not notified to the defendants at the time of such service, clearly could not deprive the legal owner of the right of taking the goods out of the manual possession of the actual possessor in an action against him. Such a mere constructive change of possession might warrant an action against the principal, and the taking the possession away from his agent, (§ 209), but could not defeat the right of proceeding against the primary wrongdoer while still in possession. It therefore became immaterial to inquire whether the action was begun before the service of the papers or not; and consequently it is immaterial whether section 99 of the Code, is confined to the commencement of actions to save the statute of limitations, or whether, under sections 135 and 209, jurisdiction over the property, at least if in Miller’s possession, was acquired by delivery of the papers to the defendant to be served.
The fifth request of the plaintiff to the Court, to charge that the defendants took the property wrongfully as against him, unless they took it out of Miller’s possession, involves substantially the same question. But there was no evidence of any change of actual possession to 'the plaintiff by Miller before the service of the papers on him and the seizure of the goods. The sale took place, and the goods were seized by virtue of the claim *70 and delivery papers, within a quarter of an hour of each other.. Those papers had already been prepared with a blank for the name of the defendant in that action, were forthwith put in the • present defendant’s hands, and could easily have been served •within that time. Miller did not execute a transfer to the plaintiff until half an horn- after his own purchase. The person who was directed, in Miller’s presence, to take possession of the goods, (Tillerton), did not do so. He only examined them as Miller’s agent. There was in fact no evidence to go to the jury, of any change of even, constructive possession of the goods from Miller to the plaintiff, before the service of the papers on the former, in the action against Mm.
The withdrawal by the present plaintiff, of the claim which he interposed in the action against Miller, so as to permit a delivery of the property to him, probably did not operate as a waiver of any claim under the 216th section of the Code. . That section seems to have been intended simply for the protection of the sheriff in case he should deliver property seized in an action of claim and delivery to a plaintiff therein, and not in order to sanction its delivery to a defendant. Upon a claim by a third party, a failure by the plaintiff to give a proper indemnity, does not entitle such sheriff to deliver the property seized to such third party. He'can merely perm it the original defendant, from whose possession the property was taken; to resume it, by relinquishing it himself. The previous rule of the common law as amended by statute, justified an officer in delivering property to a plaintiff in an action of replevin after a sheriff’s jury foundit to be his (Shipman v. Clark, 4 Den.,446; King v. Orser, 4 Duer, 431; Edgerton v. Ross, 6 Abb. Pr., 189). The section in question dispenses with the necessity of such trial. There being no evidence in the case, as to what has become of the property, it must be presumed to have remained in the possession of the defendants since its seizure, which would be an un reasonable time to wait for indemnity from the plaintiff. The Court was therefore right in charging that the present plaintiff could bring the action if he had a right to the property.
The right of Mr. J. S. Smith to the possession of the goods in question in October; 1861, when the action was begun, if material, requires a fuller examination of the plaintiff’s rights under the instrument of hypothecation executed by Hayes to Thurber, aa *71 well as its validity as security for any sum, and if valid, the amount.
That instrument was executed in July, 1860, to secure the payment by Hayes to Thurber of a certain sum. Before the 29th of October following, a judgment against Thurber for an amount sufficient to extinguish the debt secured by such instrument,was bought for a much smaller sumby Hayes against Vincent. The latter undoubtedly advanced the money on the 20th of October, 1860, to pay for it, but he testified that he first bought it, and afterwards agreed to let Hayes have it for the same price he paid for it. The latter swore he made the purchase; and another witness, (H. W. Smith), testified he negotiated it for him. Hayes executed a bill of sale for the property to Vincent on the day he borrowed the purchase money for the judgment, for a consideration exceeding it, but the amount of which was made up by legal expenses and small items. This was agreed to be security for the loan, until Thurber should assign to Vincent the instrument executed to him. The amount was to be repaid by weeldy instalments.
These facts establish the advance by Vincent of the purchase money for the-Thurber judgment; his contemporary agreement that in case he procured a transfer to himself of the instrument executed by Hayes to Thurber, he would relinquish to Hayes all his interest in such instrument upon being repaid the amount due him; while until such instrument was assigned to him, he was to hold as security for the repayment of his loan, the bill of sale of the 26th of October. The result of the whole transaction would then be, that the agreement by Vincent to ■ assign to Hayes, the debt due by him to Thurber, as well as the instrument of hypothecation given to secure it, when carried out, would extinguish such debt. In equity it was an actual assignment by Vincent of it, conditional only while the bill of sale remained as security for the loan. After the assignment from Thurber to Vincent was completed, the instrument held by the former was to take the place of the bill of sale as security - for the loan by the latter to Hayes. Thus instead of being a security for the amount due to Thurber, it became at most only one for the smaller sum due to Vincent. He understood it to be so, and accordingly informed the plaintiff’s agents at the time they purchased it, that only a certain sum was due on it; *72 being equal to the amount advanced by him less subsequent payments.
In February, 1861, while Vincent held both the instrument .executed to Thurber and the bill of sale, which appears never to have been cancelled, Hayes borrowed of Mr. J. B. Smith a certain sum which he paid to Vincent on account of the money due him. He gave Smith his note for the amount borrowed at sixty days, for the payment of which Vincent assigned to the latter the original instrument executed to Thurber as security. In April, 1861, after the note became due, before this action was commenced, and while the property pledged was still in possession of the defendants, Smith claiming to act by virtue of the instrument executed to Thurber and its assignment by the latter to Vincent, bought in the property at a sale conducted by himself by way of foreclosure.
This action was commenced in October, 1861. By the assignment-to Smith by Vincent of the instrument executed by Hayes to Thurber, he (Smith), became the mere pledgee of the debt secured by it; and if the entire legal title to it was .thereby so transferred to him, as to enable him to foreclose any right of redemption under it and take possession of the chattels transferred thereby, and sell them, he would still be trustee to Vincent or k>s assigns of the residue of the proceeds of any sale, after deducting enough to satisfy his own claim, or if the chattels were bought in by him he would be trustee of the chattels themselves. Such "transfer to Smith, being the mere mortgage of a debt, and of an accompanying pledge given to secure it, did not need to be recorded any more than an absolute assignment of such mortgage, the Statute qf this State on the subject extending to mortgages of goods and chattels only and not choses in action (N. Y. Sess. L. 1833, ch. 279).
Hnder these circumstances it appears to me that the power of Vincent to transfer the mortgage held by him to the plaintiff, after its transfer to Smith, so as to enable the former to sell the mortgaged property without the assent of the latter, depends entirely upon the question whether the assignment to the latter was a pledge or a mortgage. The leading difference between these two kinds of transfers is, that the former is security for the payment of a debt, and the latter is a conditional mis which becomes absolute by nonperformance of the condition, which repuires payment of a specified sum at a fixed day (Butler v. Mil *73 ler, 1 N. Y. [1 Comst.], 496). So much so, that on default, although the mortgagor’s interest if in possession may be levied on and sold to the extent of his right to possess them, the chattels themselves cannot be sold on execution against him (Stewart v. Slater, 6 Duer, 83, 96). After default the mortgagee’s interest may be sold -on execution against him (Ferguson v. Lee, 9 Wend., 258). Even a grant of a power to sell, and return the surplus beyond the specified sum, does not alter the character of the instrument (Dane v. Mallory, 16 Barb., 46, Burdick v. McVanner, 2 Den., 170). Even, however, in case of a mortgage, the mortgagor has a right to perform the condition, where it is the payment of money, at any reasonable time after that specified in it (Pratt v. Stiles, 17 How. Pr., 211, S. C., 9 Abb. Pr., 150), and he may even reduce the damages in an action against him by the mortgagee for conversion of the mortgaged property to the amount specified in such mortgage (Hinman v. Judson, 13 Barb., 629), although this is said in Parish v. Wheeler (22 N. Y.), to be on the ground of avoiding circuity of action. Or he may recover damages for any of it sold by the mortgagee under a power of sale beyond enough to pay the amount mentioned in the mortgage (Charter v. Stevens, 3 Den., 33). This right of performance of a condition subsequent, called sometimes an equity of redemption, may be cut off by a sale on reasonable notice or enforced by an action (Patchin v. Pierce, 12 Wend., 61).
One test whether a transfer of property is a pledge or a mortgage is, whether a debt exists independent of it, for the payment of which it is security (Langdon v. Buel, 9 Wend., 80), in which case it is the former. A pledge of property capable of physical delivery, requires that it should be so delivered Barrow v. Paxton, 5 Johns., 258 ; Cortelyou v. Lansing, 2 Cai. Cas., 200). Property not capable of such delivery may be pledged in writing (Wilson v. Little, 2 N.Y.[Comst.], 443). The transfer of dioses in action as mere security for a debt is always a pledge. (Wheeler v. Newbould, 16 N. Y., 392; M’Lean v. Walker, 10 Johns., 471; Garlick v. James, 12 Id., 146; White v. Platt, 5 Den., 269). When so received, without special authority the pledgee cannot sell them (Wheeler v. Newland, ubi sup.; see Brown v. Ward, 3 Duer, 660), or compromise them (Garland v. James, ubi sup.); he can only wait till they mature and collect them (Wheeler v. Newland, ubi sup.)
In the present case the assignment to Smith is as clearly a *74 pledge of the mortgage or pledge from Hayes, assigned by Vincent, and not a mortgage or conditional sale. If he could sell that mortgage and the debt it secured, on notice and buy it in, he might then become assignee of it, and entitled to collect it by notice and sale of the chattels or by an action. Until he did bo, however, the plaintiff as an assignee of the mortgage by Hayes subject only to the special property in Smith which the pledge created, and for an injury to which he could only recover to the extent of .his lien (Brownell v. Hawkins, 4 Barb., 491,) . might proceed to foreclose and sell under such mortgage, and no one could object except Smith. Certainly Hayes could not.
The charge of the Court that the transfer to the plaintiff was subject to the rights of Smith even if he had notice of them as an abstract proposition was correct (Muir v. Schenck, 3 Hill, 228 ; Poillon v. Martin, 1 Sandf. Ch. 569; Sweet v. Van Wyck, 3 Barb. Ch., 647), and, therefore, this third request to charge that “ the plaintiff’s rights were prior to Smith’s, and not affected thereby,” would have been properly.refused if material.
The Court charged more favorably for the plaintiff, and gave him all he asked by instructing the jury that no right or equity of Smith’s interfered with the plaintiff’s right to pursue his remedy on the mortgage for his interest in it, and if he had acquired a good and valid title to the mortgage he had a right to go on and foreclose, it.
The second request to charge “ That the defendants were not entitled to defend under Smith a judgment as against the plaintiff,” was therefore fully met in substance. The principle involved was, who had the better title or superior right so far as this action was concerned, and it was immaterial whether that was announced by stating that the plaintiff had it, whatever Smith’s rights were, or that Smith, under whom the defendants claimed, had none as against the plaintiff.
The last question on the merits arises from exceptions to a refusal to charge as desired by the first and fourth requests to charge. The former was “ that the tender made by Smith to West could have no effect, and did not impair the plaintiff’s right-under the mortgage.” And the latter that it was wholly immaterial what sum was to be paid by Hayes, as long as he did not pay or commence an action to redeem before foreclosure. The amount due to Vincent on the mortgage to Thurber when he assigned it to the plaintiff, did not exceed $1035. The sum *75 tendered was §1055. The only pretence that it was not sufficient was that the constable claimed the extravagant sum of $155 for commissions which was not chargeable against the mortgagee. It did not appear that the extra twenty dollars was not sufficient to cover expenses and interest, or that any objection was made to the amount. The question of the amount due was left to the jury.
But it is claimed that the plaintiff had a right to complete his foreclosure in pais, and sell after a tender of the amount due, and that the owner’s only remedy was to commence an action to redeem. It is contended that there is a distinction between mortgages of real and those of personal property in that respect. It was finally settled in Kortright Cady, (21 N. Y., 343), in the Court of Appeals, that a tender of an amount due on a mortgage on land, even after the law day, if refused, destroyed the lien of it on the land. By giving the mortgagor the right to redeem, by rendering him only liable for the amount to be paid, in case of his conversion of the property, and 'by making the mortgagee liable for any sales beyond the amount of his mortgage (Harriman v. Judson, Charter v. Stevens, ubi sup.), it would seem to have become a mere security for money. It is true that in the case of Butler v. Miller (1 N. Y. [1 Comst.], 496), the Judge who delivered the opinion of the Court notices the distinction between mortgages of real and personal estate, and states that the latter is a sale, and operates to transfer the whole legal title of the thing mortgaged to the mortgagee, subject only to be defeated by a full performance of the condition. It was not necessary for the decision of that case, but some respect is due to even an obiter dictum in the Court of highest resort when relying on distinctions so drawn. It has been held that after forfeiture; no tender can revest the title in the mortgagor, and even that acceptance of part is no waiver. But there are authorities to the contrary (Jenkins v. Jones, 2 Giffard's R., 99; Patchin v. Pierce, 12 Wend., 61).
Such distinctions, however, between mortgages of real and personal estate cannot prevail in case of a pledge, which is settled to be a mere security, conferring only a special property in the property pledged (Brownell v. Hawkins, ubi sup.) for any fall of value in which, after a tender, the pledgee is responsible (Griswold v. Jackson, 2 Edw., 641), which would not be the case if a bill to redeem was necessary. The interest of the pledgee *76 is in fact a mere lien, like a mortgage of lands, and should be relieved by the same process. The reasoning in the case of Kortright v. Cady, before cited, is equally applicable to pledges, and must govern this case.
The only question, therefore, which remains, is, whether the instrument executed by Hayes to Thurber was a mortgage or a .pledge, or became so by the agreement of Hayes and Vincent. It recites that it Was executed “ for securing the payment of the money thereinafter mentioned}” and its condition was to be void on payment of the sum of $3795, on demand. It contains an authority, in case of non-payment, to take possession of the goods and sell them for the best price, and out of it pay the amount before mentioned, and all charges, and return the overplus to Hayes. The recital as to the object of it would not render the mortgagor personally liable (Culver v. Sisson, 3 N. Y. [3 Comst.], 264), unless he converted the property (Weed v. Covill,14 Barb., 242). This doctrine seems contrary, however, to the ease of Case v. Boughton (11 Wend., 106), which treats the sum mentioned in the condition as a debt. The power of selling, also, and restoring surplus moneys, seems not to defeat the absoluteness of the title on default (Dane v. Mallory, Bendick v. McVanner, ubi sup). Possibly under these decisions such original instrument was only a mortgage. But by the agreement between Vincent and Hayes, as the latter testified, he borrowed of the former the money to buy the judgment against Thurber. The former charged it against Hayes in his books. He claimed it- as a debt due him; and a note taken at the same time was agreed to be applied on it when collected. There was nothing to prevent his suing Hayes for such debt if not paid on demand. The original instrument, therefore, had lost its character, if it ever had it, as a mortgage or conditional sale, and became by the oral agreement of the parties a mere pledge to secure a debt. Hpon the payment by Hayes of his debt to Vincent at any time, the lien on the chattels mortgaged was gone. If there was any conflict of evidence on this point, there was no request that it should be left to the jury. The request was peremptory that the tender was of no avail, and did not contain a hypothetical case; and therefore in order, to sustain the refusal, any state of facts, which the evidence would warrant, may be assumed to exist in this case. The refusal of the Court, therefore, to charge as requested was not erroneous.
*77 An exception was taken to the admission of the assignment to J. J. Smith in evidence after objection, but this was clearly admissible on the question of damages, if the plaintiff were entitled to recover. His rights were subordinate to, but not destroyed by Smith’s, who might equally have a right- of action against the defendants for converting his property or securities. Both clearly could not have a right of action for the same injury, and there was no privity between Smith and the plaintiff, so that the former would be entitled to the benefit of any recovery in this case by the latter. Besides this, Smith has foreclosed his mortgage, and sold the property adversely to the plaintiff; that possibility the jury had a right to take into view in assessing damages, unless they were limited to deducting the amount due Smith from the value of the goods. Of course, the fact that ■ the verdict of the jury was in favor of the defendants, does not render thé reading of the assignment to Smith in their hearing-unwarranted. The Court instructed them, notwithstanding, that the rights of the plaintiff were paramount, and no request was made as to damages.
There being no error in the admission or rejection of evidence, or the facts of the charge or refusals to charge which were excepted to, judgment must be given for the defendants, with the costs of the trial and the hearing of the exceptions.

 Present Robertson, White and Barbour, JJ.